THE STATE OF TEXAS v. E. T. MOORE.

(Case No. 4582.)

1. MOTIONS — CONSOLIDATION OF — COSTS.— A motion against a county attorney to compel him to pay into the state treasury money which he had collected by suit against a defaulting tax collector, is practically a suit against him by the state, and where seven such motions were made, in seven different cases, it was not error to consolidate them; nor was it error to refuse the costs of more than one motion.

2. ATTORNEY GENERAL — POWERS AND DUTIES OF — LEGISLATIVE POWER OVER.— Although the attorney general is classed by the constitution as belonging to the executive department, and district and county attorneys are classed as belonging to the judicial department, the legislature, under the clause declaring that the attorney general "shall perform such other duties as may be required by law," had the power to make that officer the adviser of district and county attorneys, and the representative of the state in suits for the recovery of money due the state in counties in which there are no district or county attorneys.

3. SAME — DISTRICT ATTORNEY — FEES OF.— The legislature, however, cannot empower the attorney general to take control of cases in which the constitution makes the county or district attorneys the representative of the state; nor can it empower him to deprive those officers of the fees which are by law allowed in such cases.

4. DISTRICT AND COUNTY ATTORNEYS — POWERS AND DUTIES OF.— The constitution gives to district and county attorneys the power to represent the state in all cases, civil and criminal, in the district and inferior courts of their respective counties, except in those cases where it confers that power on the attorney general.

5. LEGISLATIVE POWER — LIMITATION OF.— The legislature, unless expressly authorized to do so, cannot withdraw power from the hands in which the constitution has placed it. Such power cannot be implied.

6. COUNTY ATTORNEYS — COMMISSIONS OF.— Although art. 257, R. S., recognizes the fact that county attorneys are entitled to commissions upon money collected, which must be paid into the state treasury, neither that article, nor any other law in force, fixes the rate of such commissions.

7. SAME — STATUTE CONSTRUED.— Art. 1112, Code Crim. Proc., must be construed as having no reference to such collections.

8. SAME.— The rate of commissions not being fixed by law, the courts have no authority to fix it.

9. SAME.— No public officer can collect fees, or impede in its course to the treasury any money, without a law authorizing him to do so, and clearly fixing the amount.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

*J. H. McLeary*, Attorney General, for the state, filed both a brief and a printed argument, which are too long for insertion in full. The positions taken will appear from the following extracts:

1. The attorney general has the right under the laws to bring and prosecute suits on behalf of the state against defaulting tax collectors and their sureties in the several district courts of the state, to the exclusion of all other officers and attorneys. Citing R. S., arts. 2802a, 2803, 2800.

2. The district court had no authority to exclude the attorney general from the control of suits brought by him, and on motion of the county attorney to place him in charge of such suits.

3. If the county attorney has any right to appear in such suits at all, it is only as an assistant to the attorney general, and when requested by him, acting as his junior counsel. Citing R. S., arts. 2798, 2799, 2800, 2804, and arts. 30 and 40, Code Crim. Proc.

4. These suits being brought by the attorney general, and the county attorney having obtained control of them wrongfully, to the illegal exclusion of the attorney general, the county attorney cannot claim any fees or commissions for his services or collections.

7. The law nowhere provides for any fees or commissions in suits like these, and the constitution expressly forbids the payment to him of any fees, commissions or perquisites which are not prescribed by law.

*D. W. Doom* and *Osceola Archer*, for appellee, filed a brief, and the former an elaborate written argument. In the brief is found the following proposition:

The defendant, as county attorney of Travis county, being required by the constitution to represent the state in all cases in the district court of Travis county, and having been, by order of the court, required to represent the state in the seven cases in which these motions were made against him, and having prosecuted said cases to judgment and execution, and no other compensation than commissions being provided by law for such services, was entitled, under the law, to ten per cent. commissions on all money collected for the state on the judgments in said cases, and, therefore, the second conclusion of law found by the court, and the judgment in accordance therewith, are correct. Citing Const., art. 2, sec. 1; art. 5, sec. 21; art. 4, sec. 22; art. 3, secs. 35, 36–43; R. S., arts. 245, 248, 249, 250, 254, 255, 257, 260, 2797, 2798, 2799, 2389, 2375, 2396, 2400; Code of Crim. Proc., arts. 31, 41, 975, 976, 977, 978, 979, 980, 1112, 1113, 449, 836, 891; Act of August 23, 1876, pp. 284–286, secs. 2–7; Arts. 1112, 1113 of the Code of Criminal Procedure, as it came from the commissioners to revise the laws and as adopted by the legislature; Report of the commissioners to revise the laws, page 13; Act of April 22, 1879, p. 133; Act of August 7, 1876, p. 85; The State v. Railroad Company, 24 Tex., 80; The State v. Norrell, 53 Tex., 427; Spencer v. Galveston County, Galveston term, 1882; Comstock v. Grand Rapids, 40 Mich., p. 397; Clough v. Hart, 8 Kans., 487; Missouri River Railroad Co. v. Richards, 8 Kans., 101.

Counsel also contended that the commissions of the county attorney in such cases were fixed by article 1112, Code Crim. Proc., referring to sec. 7 of the act of August 23, 1876, as the original from which art. 1112 was taken.

STAYTON, ASSOCIATE JUSTICE.— This action was brought by the state of Texas, through the attorney general, by motion, against E. T. Moore, county attorney for Travis county, to compel Moore to pay into the state treasury a certain sum of money, collected of A. M. McIlvaine and others by Moore, as county attorney, under a judgment against McIlvaine, who was a defaulting tax collector, and his sureties. Moore, the county attorney, resisted the motion, upon the ground that he was entitled to retain the money in controversy as his commission of ten per cent. on the sum collected from McIlvaine and his sureties.

There were pending six other motions of the same character against Moore, in all of which he set up the same defense.

The motions in the seven cases were consolidated, and a judgment was rendered therein that Moore should pay into the state treasury the sum of $97.90, the same being ten per cent. on sum collected by him in fees due to officers as fees in felony cases, to pay which the appropriation was exhausted, and on that account no commissions on the sum so collected was allowed.

Before final judgment was entered upon the seven motions, Moore paid the $97.90 into the state treasury, and produced evidence thereof to the court, and the court ordered that no execution should be issued therefor. The court adjudged that Moore, the county attorney, was entitled to ten per cent. commissions on sums collected on judgments recovered by him, and that he was entitled to hold the same, and gave judgment against him for the cost of only one motion.

It is claimed that the court erred in consolidating the seven motions.

These motions were all made by the state of Texas against E. T. Moore, and the fact that the money which it was sought to compel him to pay into the state treasury was collected from seven defaulting tax collectors, did not render it necessary to file a motion in each case.

The motions were practically suits, and being between the same parties, the court did not err in consolidating them (R. S., 1450), nor did the court err in refusing the costs of more than one motion.

In the months of February and March, 1881, the Hon. W. M. Brown, comptroller of public accounts, placed in the hands of J. H.

McLeary, attorney general of the state of Texas, certain accounts against the following defaulting collectors, to wit:

Against G. W. Loftin and sureties, against J. T. Wilson and sureties, against J. W. Stockley and sureties, against A. McIlvaine and sureties, against J. J. McConn and sureties, against B. B. Meaders and sureties, and against J. M. Elkins and sureties.

Petitions were prepared by the attorney general in his office, and filed in the district court of Travis county, on the dates and with the dockets numbers as follows:

| Docket No. | Style. | Date of file. |
|---|---|---|
| 5597 | The State v. G. W. Loftin et al | March 11, 1881 |
| 5607 | The State v. J. T. Wilson et al | March 19, 1881 |
| 5610 | The State v. J. W. Stockley, Adm'r, et al | March 22, 1881 |
| 5611 | The State v. A. McIlvaine et al | March 22, 1881 |
| 5617 | The State v. J. J. McConn et al | March 25, 1881 |
| 5621 | The State v. B. B. Meaders et al | March 28, 1881 |
| 5623 | The State v. J. M. Elkins et al | March 29, 1881 |

And service obtained on the defendants thereunder by the efforts of the attorney general.

On the 11th day of April, 1881, E. T. Moore, Esq., filed motions in all the above cases, in which, after setting out that he was county attorney of Travis county; that there was no district attorney; that under the constitution and laws of the state, it was his duty and privilege to institute and prosecute these suits; that these suits had been instituted against his consent, and without his knowledge, by the attorney general, and prayed that the court enter an order in each of said causes recognizing his right to prosecute and control these suits to the exclusion of all other officers or attorneys.

This motion was argued before the court on the 16th of April, in the case of The State of Texas v. J. J. McConn, No. 5617.

The court sustained the county attorney's motion, took from the attorney general the right of appearing and prosecuting in suits he had brought, and in everything gave control to the county attorney to the exclusion of the attorney general.

After this action of the court the several suits were prosecuted to final judgment by E. T. Moore, and the money upon which he claimed commissions was collected on said judgments, partly by him and partly by the attorney general, and the same, less ten per cent. as commission, was paid into the state treasury by the officer collecting the same, which sum E. T. Moore, as county attorney, claimed the right to retain, and his right so to do presents the main question in the case. While it is true that our government is departmental in character, and that the officers of the different departments are to a

very large extent independent of and free from the control of the heads of other departments, yet in the very nature of things, in the details of business, occasions will and do arise, where officers of the executive department do and ought to exercise a power at least advisory over some officers, who, although classed in a different department, exercise powers in fact partaking more of the character of executive power than of judicial power; among these are district and county attorneys, sheriffs and constables.

As was said by Roberts, J., in the case of The State v. The Southern Pacific R. R. Co., 24 Tex., 117, in speaking of the powers of the attorney general and of district attorneys, and of their relation to the executive of the state, " In England the king could direct and control the bringing of suits by his direct control over the officer who might be attorney general. In this state such direct control as a legal power is cut off by the independence of the law officers of the state. Still it does not follow that all official connection is severed between the supreme executive officer of the state and those who represent the state in our courts. The power of the governor may be advisory or suggestive of duty in this case, as it is in many of his functions. And, although absolute subjection does not exist, harmony between executive officers who are impelled by a common duty is to be expected generally, unless a difference of opinion should exist as to the proper course to be pursued. That is an inconvenience which is consequent upon maintaining the independence of inferior officers. . . . While our statutes seem designed to make a division of powers and duties between them (attorney general and district attorneys), in representing the interest of the state in the several courts, they evidently contemplate a correspondence for advice and information between them."

From the 11th day of May, 1846, until the present time, this relationship has, under the statutes of this state, been recognized, and it is not believed that the fact that, under the present constitution, they have been placed in different departments, severs that relationship, their duties being of the same character; for while the constitution declares that no person, " being of one of those departments, shall exercise any power properly attached to either of the others, except in the instances herein provided," it also declares that the attorney general, in addition to the powers and duties which are expressly conferred upon him by the constitution, shall " perform such other duties as may be required by law."

Under this provision of the constitution the legislature has the power to make the attorney general, as it has done, the adviser of

district and county attorneys.   He is the superior law officer of the state.

In reference to the duties of the attorney general, art. 2802a, R. S., provides that "he shall, at least once a month, inspect the accounts in the offices of the state treasurer and comptroller of public accounts of all officers and of individuals charged with the collection or custody of funds belonging to the state, and proceed immediately to institute or cause to be instituted against any such officer or individual who is in default or arrears, (suit) for the recovery of funds in his hands."

Under the provisions of this act we have no doubt that the attorney general would have the power to institute and prosecute a suit for the recovery of money due to the state, in any county of the state in which there might not be a county or district attorney — and there are frequently counties in which there are none,— or that he might in such case fully represent the state in any character of suit pending in the district or inferior courts of the state, to which the *venue* of the case pertained; otherwise occasions might arise in which no official representation could be had by the state.   His power to prosecute a suit against a county or district attorney, to compel the payment into the state treasury of money collected by such officer, would clearly exist.   His power under the article above referred to, to prosecute this suit in the district court, is not questioned.   And under that act we have no doubt that the attorney general might prosecute, in connection with the proper district or county attorney, such suits as are therein provided for; such action upon his part, however, could not control the right of a county or district attorney to such fees as may be provided by law for such officers in such cases, nor deprive them of their freedom and independence of action as to method of managing and conducting the case, further than he may do so by advisory methods, unless the legislature has the power to impose upon him the powers which the constitution expressly confers upon county and district attorneys.

Had the legislature such power?   This question is not without difficulty, and its solution depends upon the true construction of the provisions of the constitution, which are apparently somewhat conflicting, in regard to the powers and duties of the attorney general and county attorneys.

The constitution provides that " the attorney general  .  .  . shall represent the state in all suits and pleas in the supreme court of the state in which the state may be a party, and shall especially inquire into the charter rights of all private corporations, and, from

time to time, in the name of the state, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power, or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the governor and other executive officers, when requested by them, and perform such other duties as may be required by law. . . . He shall receive for his services an annual salary of two thousand dollars, and no more, besides such fees as may be prescribed by law; *provided*, that the fees which he may receive shall not amount to more than two thousand dollars annually." Const., art. 4, sec. 22.

So much of the constitution as prescribes the powers, duties and compensation of county attorneys is as follows: "The county attorneys shall represent the state in all cases in the district and inferior courts in their respective counties. . . . County attorneys shall receive as compensation only such fees, commissions and perquisites as may be prescribed by law." Const., art. 5, sec. 21.

These two sections taken together render it evident that it was not intended to confer upon county attorneys the power, or to impose upon them the duty, of representing the state *in all suits* in the district and inferior courts; for it is made the express duty of the attorney general to prosecute certain classes of suits which can only be prosecuted in the district courts of the state. The State *ex rel.* Clement *v.* The Paris R'y Co., Austin Term, 1881. If in this class of suits he may call to his assistance a district or county attorney, this detracts nothing from his powers or duties.

It is claimed, however, that under that clause of art. 4, sec. 22, which provides that the attorney general shall "*perform such other duties as may be required by law*," that the legislature may empower him to discharge such duties as are imposed upon district or county attorneys, and that by art. 2802*a*, R. S., the attorney general is empowered to institute and prosecute against delinquent tax collectors, in the district courts, all such suits as may become necessary to secure the payment into the treasury of the state of the sums by them collected.

That article read as follows: "He shall, at least once a month, inspect the accounts in the offices of the state treasurer and the comptroller of public accounts of all officers and individuals charged with the collection or custody of funds belonging to the state, and shall proceed immediately to institute or cause to be instituted against any

such officer or individual who is in default or arrears, (suit) for the recovery of funds in his hands; and he shall also institute immediately criminal proceedings against all officers or persons who have violated the laws by misapplying or retaining in his (their) hands, funds belonging to the state." This article is broad enough to confer all the power claimed; but it is not believed that it was the intention of the constitution to confer, by the general clause above referred to, power upon the legislature to give to the attorney general power to perform those acts which the constitution itself conferred upon county attorneys; but that it was intended thereby to give the legislature power to confer upon the attorney general such powers as might be deemed necessary in regard to matters which had not been expressly conferred by the constitution upon some other officer. Any other construction would lead to the doctrine that the constitution had empowered the legislature to alter the constitution itself, without an express grant of such power. Art. 2802*a*, R. S., grants some powers and imposes some duties upon the attorney general in regard to matters upon which the constitution is silent, and in so far as it does so, there can be no objection to their exercise. The legislature has imposed upon the attorney general many duties in regard to which the constitution says nothing, among which it is made his duty to examine the charters of contemplated railway corporations (Acts 1876, 141); he is made a member of the board to contract for public printing (Acts 1876, 31); he is member of the board to have land for new capital surveyed, sold and capital built (Acts 1879, 9, 111); and many other powers and duties are imposed upon that officer.

It must be presumed that the constitution, in selecting the depositaries of a given power, unless it be otherwise expressed, intended that the depositary should exercise an exclusive power, with which the legislature could not interfere by appointing some other officer to the exercise of the power.

This is recognized in art. 2 of the constitution, which provides that " the powers of the government of the state of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

The attorney general is made a member of the executive depart-

ment, while county attorneys are made members of the judicial department. They each have certain powers, the exercise of which would seem to require that the one as well as the other might properly have been made a member of the executive department; but the constitution provides otherwise, and grants to the attorney general certain powers, the exercise of which can only be had in the judicial department, and those are " in the instances herein expressly permitted."

The powers granted to county attorneys in reference to representing the state *in all cases in the district and inferior courts* in their respective counties, is broad, and comprehends alike cases civil and criminal, except so far as the constitution itself confers power upon the attorney general to represent the state in those cases.

If the legislature had attempted to confer power upon a county or district attorney to represent the state in the supreme court, to the exclusion of the attorney general, no one would question its want of power to do so, and this for the sufficient reason that the constitution declares that the attorney general shall represent the state in that court, and the legislature has no power to alter it or evade its commands.

That the constitution might empower the legislature to withdraw power from the hands in which the constitution placed it, and to confer the same upon an another officer or tribunal, cannot be questioned; but to enable the legislature to do so, the power must be given in express terms, and it cannot be implied. Such a power is found in article 5, section 22, of the constitution, which provides that " The legislature shall have power, by local or general law, to increase, diminish or change the civil and criminal jurisdiction of county courts; and in cases of any such change of jurisdiction, the legislature shall also conform the jurisdiction of the other courts to such change."

The constitution does not in express terms make it the duty of the attorney general to represent the state in suits in which it is interested in the court of appeals, but it does not confer that power upon any other officer; hence the legislature had full power to impose, as it has done, that duty upon the attorney general.

The provision of the constitution which declares that the attorney general, in addition to the duties specifically imposed upon him, shall " perform such other duties as may be required by law," is general; that part thereof which declares that " the county attorneys shall represent the state in all cases in the district and inferior courts in their respective counties" is specific, and under the well

settled rule of construction, if there was a conflict, the latter would have to prevail.    Warren *v.* Shuman, 5 Tex., 454.    Legislative construction, though entitled to great weight, is not binding upon the courts, and the settled doctrine is that construction for the purpose of conferring power should be resorted to with great caution, and only for the most persuasive reasons.    Field *v.* The People, 2 Scam., 79.

If we look to past legislation, under all the constitutions of this state, none of which defined the duties of the attorney general or of district or county attorneys so specifically as does the present, it will be seen that it was always contemplated that the district attorneys should represent the state in all cases in the district and inferior courts, except certain actions which were designated; as were suits against colonial contractors which the attorney general was required to prosecute.    Pasch. Dig., 210.    The constitution of 1870, art. 4, sec. 23, made it the duty of the attorney general to "superintend, instruct and direct the official action of the district attorneys so as to secure all fines and forfeitures, all escheated estates and all public moneys to be collected by suit."

We have found no law which required the attorney general to execute any bond, as district attorneys were heretofore and as county attorneys are now required to execute, to secure the payment into the state treasury of such money as they may collect for the state.    This, of itself, would be no argument in favor of the proposition that the attorney general had no power to represent the state in the district and inferior courts in cases for the collection of money due to the state, if such power was expressly granted; but in the absence of such express grant of power, when we take into consideration the fact that such bonds are required of perhaps every officer whose duties require him to collect money for the state, the non-requirement of such a bond is strongly persuasive of the want of intention to confer upon the attorney general the power to collect money from defaulting tax collectors.    Since the act of 1846, it has been made the duty of the attorney general " to transmit to the proper district or county attorneys, with such instructions as he may deem necessary, all certified accounts, bonds or other demands which may have been delivered to him by the comptroller of public accounts for prosecution and suit."    R. S., 2799.

We are of the opinion that the court did not err in holding that it was the right and duty of the county attorney to represent the state in the several suits hereinbefore referred to.

Did the court err in holding that the county attorney was en-

titled to retain ten per cent. of the amount collected under the judgments recovered by him as commissions?

That some of the money may have been paid to the attorney general does not affect the question; if the county attorney was entitled to the commissions claimed, had the money gone into his hands.

The constitution, art. 5, sec. 21, provides that "County attorneys shall receive as compensation only such fees, commissions and perquisites as may be prescribed by law."

The Revised Statutes recognize the right of a district or county attorney to retain commissions on moneys collected by them for the state, but do not provide what commission may be retained.

Art. 257, R. S., provides that "Whenever a district or county attorney has collected money for the state, or for any county, he shall, within thirty days after receiving the same, pay it into the treasury of the state, or of the county to which it belongs, after deducting therefrom and retaining the commissions allowed him thereon by law." In the act of August 7, 1876, p. 88, defining and regulating the duties of county attorneys, and in the act of August 23, 1876, p. 286, fixing and regulating the fees of all the officers of the state, and of the several counties, it was provided that, "on all fines, forfeitures, or money collected for the state or county, recovered by him, the county attorney shall be entitled to ten per cent. of the amount so collected."

This law is not carried into the Revised Statutes, which provide "That all civil statutes, of a general nature, in force when the Revised Statutes take effect, and which are not included therein, or which are not expressly continued in force, are hereby repealed." R. S., p. 718, sec. 4.

This repeals the acts of 7th and 23d of August, 1876, which were the only laws in force regulating the compensation of county attorneys in civil cases. The case of Spencer v. Galveston County was upon facts arising before the adoption of the Revised Statutes, and no examination of the rights of county attorneys under the Revised Statutes was made.

The laws regulating the commissions of county attorneys in cases civil, and not in any manner connected with the administration of the criminal law of the state, were "civil statutes;" they were "of a general nature," for they applied to all cases and officers within their terms; they are not included in the Revised Statutes; nor are they "expressly continued in force."

It is claimed, however, that art. 1112 of the Code of Criminal Procedure is applicable to this case.

That article reads as follows: "The district or county attorney shall be entitled to ten per cent. on all fines, forfeitures, or money collected for the state or county upon judgments recovered by him, and the clerk of the court in which such judgments are rendered shall be entitled to five per cent. of the amount of said judgments, to be paid out of the money when collected."

This article, in so far as the rights of a clerk to receive commissions, in such cases as those in which the county attorney in this cause claims the right to retain them, was considered in the case of The State of Texas v. Norrell, 53 Tex., 430, and it was therein held that that article had no application to moneys other than such as were collected under the Penal Code and Code of Criminal Procedure.

The language is in no material respect different in respect to the clerk to that applicable to a county attorney, except in the per cent. which each are therein declared to be entitled to.

It is true that there is an omission to provide in the Revised Statutes for commissions, in civil cases in which the state is a party, to county or district attorneys, and that the same does provide fees for clerks in all civil cases, and this in construction is entitled to some weight, for it is not to be presumed that officers are to work without compensation.

Art. 1112, Code Crim. Proc., as it now stands, was not contained in the code as it came from the hands of the commission to revise the laws, and as the same was adopted; but the article as it then stood was amended by the insertion of that part thereof which applies to clerks, by the act of April 22, 1879, which by its title professes to be an amendment to "An act to adopt and establish a penal code and a code of criminal procedure for the state of Texas."

While sections 35 and 36 of art. 3 of the constitution, by section 43 of that article are inoperative upon the revision required to be made by the last named article, yet those sections are operative upon any amendment to a civil or criminal statute contained in either the civil or criminal codes as revised; and it may well be questioned if any presumption could be entertained that the legislature, in the face of sections 35 and 36, art. 3, intended to give art. 1112, Code Crim. Proc., any effect whatever in reference to the collection of money in suits in every respect civil in character, and which in no manner are connected with the administration of the criminal law.

A fair construction of that article may limit its operation to such moneys as are collected in the name of the state under the provisions of the Code of Criminal Procedure, which, however, when col-

lected, are by law to be paid into the county treasury; for there is nothing in its language which makes it applicable to money which must be paid into the treasury of the state. Article 257, R. S., does recognize the fact that county attorneys are entitled to commissions upon moneys collected, which must be paid into the state treasury, but none of its provisions fix the rate of commission.

If, after art. 1112, Code Crim. Proc., became operative, and before the Revised Statutes took effect, a question had arisen as to the rate of commission which a county or district attorney was entitled upon collections made from a tax collector, no one would have thought to look, or would have felt authorized to look to that article for the measure of compensation, but would have looked to the civil statutes then in force..

Past legislation will illustrate the question. The act of 1848 (Pasch. Dig., 3274) provided for commissions in all suits prosecuted by district attorneys for the state in which money was collected, without any distinction between suits which were strictly civil and such as were connected with criminal procedure, at the rate of five per cent. upon all sums not exceeding $5,000, and upon all sums in excess of that amount, two and a half per cent. The Code of Criminal Procedure allowed five per cent. commissions on all sums collected under its provisions, without reference to the amount collected. Pasch. Dig., 3274. The rate of commission was again changed under the Code of Criminal Procedure, in 1870 (Pasch. Dig., 5842), and as thus changed, district attorneys were entitled to a fee of ten per cent. on all sums not exceeding $1,000, and five per cent. on all sums in excess of that.

Under these laws, the act of 1848 would have regulated the rate of commission in civil cases, so long as it remained in force.

From this it will be seen that the rate of commission in civil and in criminal proceedings has not been the same at all times.

In fact, all of the provisions of the Code of Criminal Procedure regulating commissions have been confined to collections made under its authorization, unless article 1112 is an exception.

When we consider that in making amendments to the Penal Code or Code of Criminal Procedure the title to the amending act, under sec. 35, art. 3, of the constitution, must show the subject of the amendment, and that that subject must be one connected with the criminal law, it cannot well be conceived that the legislature intended to make that article applicable to civil suits, or to commissions in civil cases, which can only be regulated by the Revised Statutes, or law amendatory thereof. An amendment purporting in

its title to be an amendment to the Code of Criminal Procedure, which should attempt to regulate fees in actions in no manner connected with the administration of the criminal laws, would be void under the 35th section of art. 3 of the constitution, and it could not be presumed that the legislature intended to do indirectly what it could not have done directly.   Cannon v. Hemphill, 7 Tex., 207.

The Revised Statutes declare that "The duties and powers of district and county attorneys shall be such as are prescribed in this title and in the Code of Criminal Procedure of this state " (R. S., 250); but carefully abstains from attempting to designate those powers any further than the same apply to matters essentially civil in their character.   But this article cannot be construed to mean that the rights of a county attorney are the same in collections made in civil cases, as in collections made in criminal cases; if the legislature had so intended, a few plain words would have expressed that intention; besides, it would require a meaning to be given to the words " duties " and " powers " which they do not ordinarily have, to make them reach the question now under consideration.

It is claimed, however, that if art. 1112, Code Crim. Proc., does not regulate the rate of commission which a county attorney is entitled to in civil cases, that the same may be looked to, and the rate of commission in such cases, by analogy, may be determined.

In actions between man and man for services rendered by the one at the request of another, in the absence of a contract fixing the compensation, the courts have the power to inquire what will be a reasonable compensation for the services performed, and to render judgment for such sum; but no such power is believed to exist in regard to the fees of public officers, in the absence of an express grant of such power.

The constitution provides that " The legislature shall provide by law for the compensation of all officers, servants, agents and public contractors not provided for in this constitution," and this power can be exercised by the legislature alone.

A failure of the legislature to exercise the power thus conferred cannot clothe the courts with it.

The case of Missouri River R. R. Co. v. Richards, 8 Kans., 101, is referred to as an authority for the exercise of such a power by the courts; but that case was one in which a secretary of the company had rendered services for it, but the board of directors had not fixed the rate of compensation therefor, as the by-laws of the company required they should do, and the court held that the secretary was entitled to a reasonable compensation in the absence of any under-

standing that the services were to be rendered without compensation. This was an action essentially between persons, and the principle therein announced has no application to the case now under consideration.

It is not believed that any well considered case can be found in which a public officer has been permitted to collect fees unless the same are provided for, and the amount thereof declared by law.

In pursuance of the constitutional requirement, the legislature has enacted laws fixing the compensation of public officers in cases civil and criminal; and if there be nothing in the laws evidencing a contrary intention, it would probably have to be held that an officer was not entitled to any compensation for such services as it is made his duty to perform, but for which no compensation is provided by law; but as we have already said, art. 257, R. S., does recognize the right of a county attorney to commissions on money collected by him for the state; it, however, fails to fix the rate of such commission, and until the legislature does so, neither the courts nor the interested party, nor any officer of the government, can fix it.

If relief can be given to the appellee, it must be sought through the legislative department of the government, and not through the judiciary.

No public officer can withdraw from the state treasury, or impede in its course to the treasury, any money without a law authorizing him to do so, and clearly fixing the amount.

The court erred in adjudging that the appellee was entitled to retain in his hands ten per cent. of the amount collected, and the judgment of the district court will be reversed, and judgment here rendered that the state recover of the appellee the sum of $1,221.96, the same being amount of money retained by the appellee after deducting $97.90, paid into the state treasury at the time of rendition of judgment in the court below.

REVERSED AND RENDERED.

[Opinion delivered June 13, 1882.]