WARREN W. MOORE v. C. K. BELL, ATTORNEY-GENERAL.

No. 1053. Decided January 13, 1902.

1.—Railroad Commission Law—Prosecution for Violation—Attorney-General— District Attorney.

The institution, prosecution, and management of all suits for penalties, against railroads for the violation of provisions of the Railroad Commission Law are committed exclusively to the commission and to the Attorney-General; and a district or county attorney has no authority to institute a suit of this class, nor to appear in or prosecute it except by request of the Railroad Commission. Sec. 2, art. 10, Const., Amendment of 1890; Rev. Stats., arts. 4568, 4577, 4579. (Pp. 153-155.)

2.—Same—Constitution.

Section 21, article 5, of the Constitution does not confer on district or county attorneys the right to represent the State in all suits in the district court; and the amendment to section 2, article 10, empowers the Legislature to confer upon the agencies created by it powers which were, before the adoption of the amendment, vested in other officers by the Constitution. (Pp. 156, 157.)

**3.—Same—Fees.**

The district attorney of Travis County was not entitled to commissions on penalties recovered in suits by the State, prosecuted by the Attorney-General under direction of the Railroad Commission, for violation of its regulations by railroad companies. (Pp. 152-157.)

Original application for the writ of mandamus against the Attorney-General of the State.

*Warren W. Moore,* relator, in pro per.

*C. K. Bell,* Attorney-General, in pro per., and *T. S. Reese,* Assistant Attorney-General, for respondent.

BROWN, ASSOCIATE JUSTICE.—This is an original suit in this court seeking a mandamus against the respondent, C. K. Bell, Attorney-General of the State, to compel him to pay over to the relator certain moneys alleged to be in the hands of the respondent and claimed to belong to the relator. The petition alleges in substance that at the date of the collections made in the several cases stated, the relator was and is now district attorney for the judicial district which embraces Travis County, and that C. K. Bell was then and is now the Attorney-General of the State of Texas. It is alleged that the Attorney-General of the State, at the request of the Railroad Commission of Texas, instituted a number of suits in the District Court of Travis County against the Texas & New Orleans Railroad Company to recover of that corporation penalties incurred by it for refusing to permit a person authorized by the Railroad Commission of Texas to examine its books and papers; that all of said suits were consolidated and tried as one case, which resulted in a judgment for the State of Texas in the sum of $2500, which sum, with interest to the amount of $67.50, was collected by the said Attorney-General, the respondent herein.

It is also alleged that at the instance of the Railroad Commission of Texas, the Attorney-General instituted in the District Court of Travis County a suit in the name of the State of Texas v. The Houston East & West Texas Railway Company to recover of it penalties incurred by the corporation in charging, demanding, and collecting from one person less compensation than it charged another person for like and contemporaneous service; that said suit was tried and resulted in a judgment in favor of the State of Texas for the sum of $1500, which judgment the respondent, the Attorney-General, collected and received for the State of Texas.

Relator alleges that he was district attorney for the said district during the pendency of the said suits; that he informed the Attorney-General that he, the relator, as district attorney, claimed the right exclusively to represent the State of Texas in all suits pending or that might hereafter be brought by the State of Texas in the District Court of Travis County, and that the relator would claim the fees to which he

would be entitled in the event he represented the State in the said proceedings; but the respondent denied the right of the relator to represent the State in the aforesaid suits and insisted that he, the respondent, had the right, as Attorney-General, to bring and prosecute said suits in the name of the State of Texas, but he informed relator that after he had collected the moneys recovered from the said defendants, if successful, he, the respondent, would reserve in his hands said fees "until the right of the relator to the same could be ascertained and determined." It is also alleged that the Attorney-General has paid into the treasury of the State all of the said moneys except the sum of $586.75, which he is holding to await the determination of the rights of the relator therein. It is alleged that the relator, as district attorney, was entitled to the sum of $586.75, which is in the hands of the Attorney-General; that he is entitled to $50 for each penalty recovered and 10 per cent of the remainder of the amount collected, making the sum so reserved by the respondent. The relator alleges that he did not make a motion in the District Court of Travis County to be allowed to take charge of the litigation in the cases mentioned because respondent agreed that he would waive the failure of the relator to make such motion and have the right of the relator to the fees herein claimed determined. It is prayed that the court shall adjudge a writ of mandamus against the Attorney-General, C. K. Bell, requiring him to pay over to the relator the said sum, $586.75, and for proper and equitable relief.

The respondent, C. K. Bell, Attorney-General, filed a general demurrer to this petition, upon which this case was submitted.

In 1890, the people of Texas adopted the following amendment to section 2, article 10, of the Constitution: "Railroads heretofore constructed or which may hereafter be constructed in this State are hereby declared public highways and railroad companies common carriers. The Legislature shall pass laws to regulate railroad freight and passenger tariffs, to correct abuses, and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this State, and enforce the same by adequate penalties, and to the further accomplishment of these objects and purposes, may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable." The Legislature which assembled in 1891 enacted what is known as the Railroad Commission Law, which appears in the Revised Statutes of 1895 as chapter 13, title 94. By that law, the Railroad Commission was created and invested with very large powers and extensive control over the operation of railroads in Texas. To carry into effect the amendment to the Constitution and to enable the Railroad Commission to enforce the laws enacted "to correct abuses and prevent unjust discrimination and extortion," the following articles of the Revised Statutes were embraced as a part of the commission law:

"Art. 4568. Any person, firm, corporation, or association, or any

mercantile, agricultural, or manufacturing association, or any body politic or municipal organization complaining of anything done or omitted to be done by any railroad subject hereto, in violation of any law of this State or the provisions of this chapter for which penalty is provided, may apply to said commission in such manner and under such rules as the commission may prescribe, whereupon, if there shall appear to the commission to be any reasonable grounds for investigating such complaint, it shall give at least five days' notice to such railroad of such charge and complaint, and call upon said road to answer the same at a time and place to be specified by the commission. The commission shall investigate and determine such complaint under such rules and modes of procedure as it may adopt. If the commission finds that there has been a violation, it shall determine if the same was willful; if it finds that such violation was not willful, it may call upon said road to satisfy the damage done to the complainant thereby, stating the amount of such damage, and to pay the cost of such investigation; and if the said railroad shall do so within the time specified by the commission, there shall be no prosecution by the State; but if said railroad shall not pay said damage and cost within the time specified by said commission, or if the commission finds such violation to be willful, it shall institute proceedings to recover the penalty for such violation and the cost of such investigation," etc.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"Art. 4579. It is hereby made the duty of such Railroad Commission to see that the provisions of this chapter and all laws of this State concerning railroads are enforced and obeyed, and that violations thereof are promptly prosecuted, and penalties due the State therefor recovered and collected. And said commission shall report all such violations, with the facts in their possession, to the Attorney-General or other officer charged with the enforcement of the laws, and request him to institute the proper proceedings; and all suits between the State and any railroad shall have precedence in all courts over all suits pending therein."

By the foregoing articles, the Railroad Commission was empowered to investigate all charges which might be made against railroad companies for the violation of any of the provisions of that law and was empowered, (1) to determine whether there had been a violation or not; (2) whether the violation was willful or not; (3) if not willful, to prescribe terms upon which the railroad company could settle with the injured party, which, if complied with, would prevent suit for the recovery of the penalty; (4) if the terms should not be complied with or if the violation was willful, it would be the duty of the Railroad Commission to institute proceedings to recover the penalties, by reporting the facts "to the Attorney-General or other officer charged with the enforcement of the law" and requesting him to institute proceedings thereon.

The powers conferred are largely discretionary; they embrace every

phase of the proceedings preliminary to the filing of a suit to enforce obedience to the law, and there is no law by which any officer or department of the government may institute a suit for those purposes, except upon the recommendation of the Railroad Commission. It is manifest that powers so broad and comprehensive operate to exclude any other officer from interfering with the enforcement of the Railroad Commission law.

The question arises, had the relator a right to appear in or to control the conduct and management of the cases against the two railroad companies for penalties? The following article of the Revised Statutes definitely answers the question: "Art. 4577. All of the penalties herein provided, except as provided in article 4575, shall be recovered and suits thereon shall be brought in the name of the State of Texas in the proper court having jurisdiction thereof in Travis County or in any county to or through which such railroad may run, by the Attorney-General or under his direction; and the attorney bringing such suit shall receive a fee of fifty dollars for each penalty recovered and collected by him, and ten per cent of the amount collected, to be paid by the State," etc. That language, in connection with article 4579, shows the intention of the Legislature to make the chief law officer of the State the representative of the State's interests in all such prosecutions and to place them strictly under his direction. The language, "all of the penalties herein provided for  *  *  * shall be recovered and suits thereon shall be brought in the name of the State of Texas by the Attorney-General or under his direction," is mandatory in form and strongly indicates the intention of the Legislature to limit the prosecution and control of such cases to the Attorney-General.

We therefore conclude that, by the terms of the law, the institution, prosecution, and management of all suits for penalties against railroads for the violation of the provisions of that law were committed exclusively to the commission and to the Attorney-General, and that the relator had no authority to institute a suit of the class in question, nor to appear in and prosecute it, except by request of the Railroad Commission.

It is claimed by the relator that the language "and said commission shall report all such violations and the facts in their possession to the Attorney-General or other officer charged with the enforcement of the laws," must be construed to mean that they should report to the Attorney-General the violations of laws which he had the right, under the Constitution, to prosecute, and to the county attorneys or district attorneys the classes of cases which fell within their constitutional power. Article 4577 negatives any such intention on the part of the Legislature, for it directly provides that the Attorney-General shall bring suits for all penalties arising under that chapter; and the language, "or under his direction," strongly supports the view that the phrase, "or other officer charged with the enforcement of the law," referred

to the violations of other laws of the State that the commission is charged to enforce, and for breach of which the district or county attorney might sue. No other officer is charged with the enforcement of the commission law. In any event, the relator had no authority to institute the suits or to prosecute them, not having been requested to do so, and has no cause of action. It is not necessary for us to decide whether the Railroad Commission might commit the prosecution of such cases to the county or district attorney, and we do not pass upon that question.

Relator insists that by virtue of section 21, article 5, of the Constitution and the laws made in pursuance thereof, he was entitled to control the two suits named in his petition, and that, so far as the commission law interferes with that right, it contravenes the following portion of that section of the Constitution: "The county attorneys shall represent the State in all cases in the district and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a district attorney, the respective duties of district attorneys and county attorneys shall, in such counties, be regulated by the Legislature. The Legislature may provide for the election of district attorneys in such districts as may be deemed necessary and make provision for the compensation of district attorneys and county attorneys." In support of his contention, relator cites the case of The State v. Moore, 57 Texas, 307. In that case, however, the court said: "These two sections, taken together, render it evident that it was not intended to confer upon county attorneys the power or to impose upon them the duty of representing the State in all suits in the district and inferior courts." County and district attorneys have no authority to bring actions of quo warranto and the like. State v. Railway, 55 Texas, 80; State v. Railway, 89 Texas, 562.

In the case of State v. Moore, before cited, the Supreme Court held that the Legislature had no power to take from an officer authority vested in him by the Constitution and confer it upon a different officer, because not authorized by the Constitution; but in that connection, Judge Stayton used this language: "That the Constitution might empower the Legislature to withdraw power from the hands in which the Constitution placed it and confer the same upon another officer or tribunal can not be doubted." The amendment to section 2, article 10 of the Constitution, before quoted, was adopted when section 21, article 5, was in force and had been construed in the case of the State v. Moore; and if there be any conflict between the provisions of the two sections of the Constitution, we think that it ought to be held that the people intended, by adopting the amendment, to modify the existing provision of the Constitution upon the subject. We are of opinion that the amendment to section 2, article 10, of the Constitution, empowers the Legislature, whenever it might be deemed necessary, to confer upon the agencies created by it for the purposes named powers which were before its adoption vested in other officers by the

Constitution. All of the powers of government were then distributed to different departments and a new department or agency could be created only by drawing upon existing departments. It would be difficult to frame a sentence which would give more unlimited power over a particular subject than is expressed in this language: "The Legislature shall pass laws to regulate railroad freight and passenger tariffs, to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads of this State and enforce the same by adequate penalties, and to the further accomplishment of these objects and purposes, may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable." The people in the exercise of their sovereign power, have seen fit to commit to the Legislature the decision as to what means and agencies may be *"adequate* and *advisable"* for the control of railroad corporations and the correction and prevention of the evils named in the constitutional amendment. The discretion which is thus placed in the Legislature is beyond judicial control so long as the law is confined to the subject matter and the purposes for which the Constitution authorized it to be enacted. It can not be contended that the creation of the Railroad Commission, with the power of investigation and the direction of suits, is not an agency or means employed for the purposes named in the constitutional amendment, and we think that there is as little doubt that the services of an attorney in prosecuting cases for the recovery of penalties is as much a means or agency in the correction of the abuses and enforcement of the laws as the commission itself.

We are of opinion that the law which authorizes the Attorney-General to institute and control such suits as those named in the relator's petition is constitutional and a valid exercise of the discretionary power vested in the Legislature, and that the relator had no right either to institute the suit or to claim a participation in or control of it after it was instituted; and the writ of mandamus is therefore refused.

*Application refused.*