**WEXLER et al. v. STATE.　(No. 8270.)**

(Court of Civil Appeals of Texas.　Galveston.
April 13, 1922.)

1. **District and prosecuting attorneys ⬤⇒9—No authority in county attorney to institute suit to enjoin abandonment of railroad.**

In view of Const. art. 4, § 22, and Rev. St. 1879, arts. 2806, 2797, 2798, as to duties of Attorney General, Const. art. 5, § 21, Vernon's Sayles' Ann. Civ. St. 1914, arts. 350, 353, as to duties of county attorneys, and article 6675, as to duties of Railroad Commission, a county attorney has no authority on his own initiative to institute suit in the name of the state to enjoin the abandonment of operation of a railroad and the removal of its tracks; the power of county attorney to "represent the state in all cases" in the district court not including authority to institute such a suit.

2. **Railroads ⬤⇒57—Removal of tracks of company incorporated under statute for private corporations permissible.**

Vernon's Sayles' Ann. Civ. St. 1914, arts. 6550, 6625, being part of the general incorporation statute for organization of railroad companies, have no application to, and do not prevent removal of tracks of, a railroad incorporated under the general incorporation statute for organization of private corporations, and which has been sold under foreclosure suit.

Appeal from District Court, Brazos County; W. C. Davis, Judge.

Suit by the State of Texas against Sam Wexler and others. From a judgment granting an injunction, defendants appeal. Reversed and rendered.

Vinson, Elkins & Wood and W. A. Parish, all of Houston, for appellants.

W. A. Keeting, Atty. Gen., Tom L. Beauchamp, Asst. Atty. Gen., and J. G. Minkert, Co. Atty., of Bryan, for the State.

PLEASANTS, C. J. This suit was brought in the name of the state of Texas by the county attorney of Brazos county to enjoin appellant from removing the rails or other materials constituting the main line track of the Bryan & Central Texas Interurban Railway Company, and from removing or injuring any of the bridges, trestles, or culverts over which said railway track was laid.

The petition alleges, in substance, that the Bryan & Central Texas Interurban Railway Company had been granted a charter by the state of Texas and had operated its railway for several years, and that its properties had thereafter been sold out under foreclosure decree entered in receivership proceedings pending in the United States District Court at Houston, Tex., and the defendant Sam Wexler had purchased said properties under such foreclosure sale; that the granting of

the charter by the state of Texas constituted a contract by which the Bryan & Central Texas Interurban Railway Company bound and obligated itself not to abandon the railroad, and that the defendant Sam Wexler, having purchased the properties, took the same charged with this obligation; but that the defendant Sam Wexler, through his agent, L. M. Levinson, who is now in possession of said railway properties, is claiming the right to remove said track, and with the assistance of a number of employés is removing the rails and tearing up and destroying the track, and is threatening to remove the bridges and culverts and to completely dismantle the said railroad.

The prayer of the petition is for an injunction restraining the defendants, Sam Wexler and L. M. Levinson, their agents and employés, "from in any manner removing said steel rails or other materials from said roadbed, and from removing, injuring or impairing any of the bridges, trestles or culverts, or any of the timbers connected therewith, supporting the main track of said railroad or any part thereof, and from permitting the same to be done, or procuring any one else to cause same to be injured or impaired, for costs of suit and for such other and further relief both in law and in equity as plaintiff may be entitled to."

The defendant Sam Wexler filed a plea in abatement contesting the authority of the county attorney of Brazos county to institute the suit, and also filed a plea of misjoinder of parties defendant, and thereafter answered in detail that the charter granted the Bryan & Central Texas Interurban Railway Company was not granted by virtue of the general railway statutes of Texas, but under the laws relating to private corporations, and that therefore the defendant Sam Wexler had a right to abandon the line of railroad; that the property could not be operated except at a loss; that it was rapidly deteriorating, and if this defendant was compelled to leave it on the ground it would be a total loss; that to compel the defendant to maintain or leave said line of railway on the ground would result in taking his property without due process of law, and would be devoting his private property to public use without any compensation—all of which was in violation of the provisions of the Constitution of the State of Texas and of the United States.

The trial court granted a temporary injunction when the original petition was filed without notice to the defendants. Thereafter, at the September, 1921, term of court, the term at which the cause was tried, the defendant Sam Wexler entered his appearance and presented the pleas and answers before mentioned. On October 28, 1921, the cause was submitted to the court without a

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

jury, and on that date the court first overruled the plea in abatement filed by the defendant Sam Wexler, and then overruled his plea of misjoinder of parties defendant, and thereafter proceeded to a trial of the cause upon its merits, and, upon a conclusion of such trial, entered judgment in favor of the plaintiff, the state of Texas, perpetually enjoining and restraining the defendants from abandoning the line of railway, or dismantling or removing it or the bridges, timbers etc., as prayed for in plaintiff's petition.

[1] Appellants first complain of the judgment on the ground that

"The court should have sustained the plea in abatement filed by the defendant Sam Wexler, because the institution and prosecution of suits in the name of and in behalf of the state of Texas to enjoin the abandonment of a line of railway situated in the state of Texas is such action as under the Constitution and statutes of Texas it is for the Attorney General of Texas to take or cause to be taken when, in his judgment, it may be proper and necessary, and the county attorney of Brazos county not having been authorized or directed by the Attorney General of Texas to institute and prosecute this suit, and the same not having been instituted and prosecuted by the Attorney General of Texas, or under his authority or direction, the plea in abatement should have been sustained."

Upon the hearing on the plea in abatement, the Attorney General, C. M. Cureton, testified, in substance, that he had nothing to do with the bringing of this suit, and that he did not authorize the county attorney of Brazos county to bring the suit in the name or in behalf of the state of Texas; that he had no personal knowledge of the fact that the matter of bringing the suit had been considered by his department, but that he knew from examination of correspondence files of his office and from conversations with his assistant, Mr. Bruce W. Bryant, that the matter had been referred to and considered by his department, and that Mr. Bryant, who had charge of this matter for the department, wrote the following letter to the county attorney of Brazos county on February 10, 1921, prior to the filing of this suit:

"State of Texas, Attorney General's Department.

"Austin, February 10, 1921.

"In re Bryan & Central Texas Interurban Railway Company.

"Hon. J. C. Minkert, County Attorney, Bryan, Texas—Dear Sir: I have carefully examined the statutes with the view of determining whether the provisions of article 6625 which prohibits a railroad company from taking up and abandoning its main lines when once constructed and operated, applies to the Bryan & Central Texas Interurban Railway Company or to any other railway company chartered under subdivision 60 of article 1121 of the Revised Civil Statutes of 1911.

"I have been forced to the conclusion that the provisions of article 6625 referred to above do not apply to this company, and therefore there is no action that this department can take to restrain the above-named road or the present owners thereof from taking up and abandoning the same.

"In reaching this conclusion, we have not been unmindful of the fact that this road has never been operated by any power except that of steam, which may have been in violation of its charter contract with the state, but this fact has not changed our conclusion as to what the law is in this case.

"Yours very truly,

"[Signed]  Bruce W. Bryant,

"Assistant Attorney General."

This evidence was uncontradicted. The only evidence offered by the appellee upon the hearing of the plea was the official commission of the county attorney.

There is no district attorney in the judicial district in which Brazos county is situated, and under the Constitution and laws of this state the powers and duties of that office are conferred and devolve upon the county attorney.

Section 22 of article 4 of the Constitution of this state, prescribing the duties of the Attorney General, provides:

"He shall represent the state in all suits and pleas in the Supreme Court of the state in which the state may be a party, and shall especially inquire into the charter rights of all private corporations, and, from time to time, in the name of the state, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power, or demanding or collecting any species of taxes, toll, freight or wharfage, not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law."

Section 21 of article 5 of the Constitution provides:

"A county attorney, for counties in which there is not a resident criminal district attorney, shall be elected by the qualified voters of each county, who shall be commissioned by the Governor, and hold his office for the term of two years. In case of vacancy the commissioners' court of the county shall have power to appoint a county attorney until the next general election. The county attorney shall represent the state in all cases in the district and inferior courts in their respective counties."

This section of the Constitution also authorizes the Legislature to provide for the election of district attorneys in such district as may be deemed necessary. The Constitution nowhere defines or prescribes the duties of a district attorney.

Article 350 of Vernon's Sayles' Civil Statutes is as follows:

"In counties where there is a county attorney, it shall be his duty to attend the terms of the county and other inferior courts of his county, and to represent the state in all criminal cases under examination or prosecution in said county, and also to attend the terms of the district court, and to represent the state in all cases in said court during the absence of the district attorney, and to aid the district attorney, when so requested; and, when representing the state alone, he shall be entitled to and receive the fees allowed by law to the district attorney; and when, at the request of the district attorney, he shall aid him in the prosecution of any case in behalf of the state, he shall receive one-half of the fee allowed by law, and the district attorney the remainder."

Article 353 of this statute provided:

"The duties and powers of the district and county attorneys shall be such as are prescribed in this title [title 13] and in the Code of Criminal Procedure of this state."

There is nothing in any of the articles of title 13 of the statutes, referred to in article 353 above quoted, which authorizes a county or district attorney to institute a suit of this character in the name of the state, and no such authority is found in any statute of this state. The article of the Constitution above quoted which provides that the county attorney shall represent the state in all cases in the district and inferior courts of his county does not give him authority to institute a proceeding in the name of the state unless he is authorized or directed so to do by some statute. County attorneys are also required to represent the county in suits brought by it; but they can bring no suit for or in the name of the county unless authorized so to do by some statute or some order of the commissioners' court. The distinction between the granting of authority to represent the state in all cases in the district and inferior courts, and the authority to institute important litigation in the name of the state, is, we think, clear, and such distinction has been recognized in the decisions of our appellate courts. Duncan v. State, 28 Tex. Civ. App. 447, 67 S. W. 903; Gear v. City of Rosenberg, 53 Tex. Civ. App. 218, 115 S. W. 653; Looscan v. County of Harris, 58 Tex. 511.

In the case of State of Texas v. Paris Railway Co., 55 Tex. 76, which was a suit brought by the county attorney of Lamar county in the name of the state to enjoin the railway company from constructing its railway track along streets in the city of Paris, our Supreme Court, in discussing the authority of the county attorney to institute the suit, says:

"We agree with the district court in its opinion that this suit could only be instituted, on behalf of the state, by the Attorney General, or by his direction.

"As this is not an information or proceeding quo warranto to forfeit the franchise of the railway company, the authority to institute it is not affected by the provisions of the act on that subject. R. S. Appendix, p. 47. The only relief sought by the petition was to enjoin the company from constructing its road at a certain point in the city of Paris, on the ground that it was proceeding to do so without any authority of law, and would thereby obstruct the street and sidewalk, create a public nuisance and cause irreparable damage. Clearly this is not a proceeding under the statute referred to.

"The Constitution, defining the duties of the Attorney General, says: 'He shall represent the state in all suits and pleas in the Supreme Court of the State, in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power, or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law.' Const. art. 4, § 22; R. S. arts. 2806, 2797, 2798.

"We think it manifest that the institution of suits in the name of the state to enjoin private corporations from exceeding their powers and thereby creating public nuisances, in such action as, under this section of the Constitution, it is for the Attorney General to take, or cause to be taken, when, in his judgment, it may be proper and necessary. The power given county attorneys 'to represent the state in all cases in the district and inferior courts in their respective counties' (Const. art. 5, § 21), does not extend to the institution of suits like this, unless it be done with the sanction and in the name of the attorney general. Whether the name of the state shall be used to enjoin, without bond, the construction of a railway, may be a matter of great importance both to the corporation and the public, and we think has appropriately been left to the determination of the Attorney General.

"This action was brought in the name of the state by the county attorney of Lamar county, on the relation of S. E. Clement and other citizens of Paris, and as it did not purport to be instituted under the authority of the Attorney General, we think the court rightly held it unauthorized."

Articles 6550 and 6625, for the alleged violation of which this suit is prosecuted, are part of the laws of this state regulating and controlling railroads. The enforcement of all of these laws is primarily committed by the Legislature to the State Railroad Commission.

Article 6675 of title 115, Vernon's Sayles' Civil Statutes, under which title the other articles cited and all of the laws relating to the control of railroads by the Railroad Commission are found, is as follows:

"It is hereby made the duty of such Railroad Commission to see that the provisions of this chapter and all laws of the state concerning railroads are enforced and obeyed, and that violations thereof are promptly prosecuted, and

penalties due the state therefor recovered and collected. And said Commission shall report all such violations, with the facts in their possession, to the Attorney General, or other officer charged with the enforcement of the laws, and request him to institute the proper proceedings; and all suits between the state and any railroad shall have precedence in all courts over all other suits pending therein."

Construing this article and the other articles of the statute prescribing the powers of the Railroad Commission, our Supreme Court, in the case of Moore v. Bell, 95 Tex. 151, 66 S. W. 45, says:

"The powers conferred are largely discretionary. They embrace every phase of the proceedings preliminary to the filing of a suit to enforce obedience to the law, and there is no law by which any officer or department of the government may institute a suit for those purposes, except upon the recommendation of the Railroad Commission. It is manifest that powers so broad and comprehensive operate to exclude any other officer from interfering with the enforcement of the Railroad Commission Law."

We think it clear under the statutes and authorities above cited that the county attorney was not authorized to bring this suit, and therefore the defendant's plea in abatement should have been sustained.

[2] The Bryan & Central Texas Interurban Railway Company was incorporated under subdivision 60 of article 1121 of title 25 of the Statutes of this state, which relates only to the organization and incorporation of private corporations. The purposes for which the company was organized are stated in its charter as follows:

"The purpose for which the corporation is formed is to construct and acquire, with power to maintain and operate street railways in Bryan, Brazos county, Tex., and between Bryan, Brazos county, Tex., and the town of Wilcox, in Burleson county, Tex., by use of electricity, gas, gasoline, denatured alcohol or naphtha, for the transportation of freight and passengers; a distance of thirty two miles, and the power to construct, own and operate depots, 'sidetracks, switches, turnouts and turntables for the line of said railway."

The charter was filed on April 11, 1913. Shortly thereafter a line of road was constructed by the company from the city of Bryan in Brazos county to Laura Station in Burleson county. In operating its road, which crossed the Brazos river, the company used the bridge of the Houston & Texas Central Railway Company under a contract with that company, which has been canceled. The only car operated over the line was a motor car which the company procured under a conditional contract of purchase. This was the only equipment the road ever owned. During the pendency of the receivership this was surrendered to the seller in consideration of the cancellation of the notes given for it.

In the latter part of the year 1913 about six miles of the track was washed away by the overflow of the Brazos river, and this part of the line was not rebuilt until after a receiver was appointed in January, 1915. Prior to the appointment of a receiver the company had issued a mortgage on all of its property to secure its first mortgage gold bonds, which bonds were issued in the amount of $277,000. This mortgage and these bonds were dated January 1, 1914. The proceeds of these bonds was used in a large measure to construct the line of railway.

The company, on or about January 1, 1915, was indebted to a great number of persons and firms in an amount not less than $25,000, and included among these claims were certain amounts due for parts of its right of way, and also due to contractors for construction work done on said line of railway.

The road was placed in the hands of a receiver by the United States District Court for the Southern District on January 23, 1915. The track was repaired by the receiver at a cost of $17,000, and he operated the road until May, 1916, by using the motor car, a steam engine, and a few coaches and cars which he rented. On May 16, 1916, acting under authority of the court, he made a contract with S. S. Hunter to take over the operation of the road. Hunter continued to furnish such service until about December, 1919, and since that time no service whatever has been furnished over the line of railway. Under date of July 26, 1920, the United States District Court, in which the receivership was pending, entered a final decree of foreclosure and sale, and entered judgment against the Bryan & Central Texas Interurban Railway Company in the amount of $386,186.35, and ordered the properties to be sold. Thereafter a sale was made under such decree, and the defendant Sam Wexler became the purchaser. A deed to Sam Wexler was duly executed by the officers of the Bryan & Central Texas Interurban Railway Company, and the special master commissioner making the sale under the above-mentioned decree. This deed provided, among other things:

"To have and to hold the said property with the appurtenances, rights and franchises, and each and every part thereof, so sold and hereinbefore described, unto the said Sam Wexler, his heirs, executors, administrators and assigns forever free from any claim or demand whatsoever on the part of the Bryan & Central Texas Interurban Railway Company, its successors or assigns, as well as from any claim or demand of Arthur B. Price, as trustee, or of any other person whomsoever."

It was agreed by the parties on the trial of this suit that all of the proceedings in the United States District Court were in all things legal and regular.

The charter granted by the state of Texas

to the Bryan & Central Texas Interurban Railway Company was forfeited by the Secretary of State of the State of Texas on July 2, 1921.

The results of trying to operate the line of railway shown on pages 38 and 39 of the statement of facts shows that, for the entire period from the inception of the road until operations ceased, there was a net deficit of approximately $149,000.

At the time this suit was brought, the defendant Sam Wexler, acting through his agent, L. M. Levinson, had a number of men employed in tearing up the railroad track and removing the material therefrom for the purpose of selling it.

Article 6550, Vernon's Sayles' Civil Statutes, under which appellee claims the right of the state to enjoin the removal of the track by the defendant, is as follows:

"Every railroad company organized under this title shall make an actual survey of its route or line for a distance of 25 miles on its projected route, and shall designate the depot grounds along such first 25 miles before the roadbed is begun, and no railroad company shall change its route or depot grounds after the same have been so designated."

Apart from the question of whether the abandonment of the operation of a railroad by its owner and the removal and sale of the material of which the road was constructed could be regarded as "a change of route or depot grounds of the railroad" in the purview of this article, by its express terms it relates only to railroads organized under the title of the statute in which it is incorporated, and as the Bryan & Central Texas Interurban Railway Company was not organized under that title, but under a title of the statute providing for the organization of private corporations, the article cannot be made applicable to that company.

The other article relied upon by the appellee (article 6625, Vernon's Sayles' Civil Statutes) is also a part of title 115 of the statutes relating to railroads incorporated under the provision of that title, and cannot, we think, be made applicable to appellants' road. It is, we think, clear from the act of the Legislature which enacted the law which is now incorporated in the statutes as article 6625, that the primary purpose of the Legislature was to provide a means by which purchasers of a railroad organized under title 115 of the statutes, the general incorporation statute for the organization of railroad companies, and which had been sold under a foreclosure decree, could obtain a new charter for the operation of such railroad, and that none of the provisions of that act relate to or have any application to a railroad incorporated under the general incorporation statute providing for the organization of private corporations.

The conclusions above expressed require a reversal of the judgment of the trial court and that judgment be here rendered as above indicated.

Reversed and rendered.