CASE 47—APPEAL FROM COUNTY COURT—JUNE 19.

# Dufour v. Stacey.

### APPEAL FROM CARROLL CIRCUIT COURT.

1. A FERRY FRANCHISE IS A PROPERTY RIGHT of which the Legislature has no power to divest the owner. Therefore, the statute giving the county court the power to revoke the franchise of any non-resident owner is unconstitutional as to the vendee of one who acquired his franchise prior to the enactment of the statute.

Dufour v. Stacey.

2. THE GRANT OF A FERRY FRANCHISE TO A NON-RESIDENT in 1843 was
    valid, as the statute did not then make it a condition that the owner
    of such franchise should be a resident citizen of this Commonwealth.

3. THE ONLY CAUSES FOR WHICH A FERRY FRANCHISE COULD BE RE-
    VOKED or discontinued, prior to the adoption of the Revised Statutes,
    were: (1) a failure for six months after establishment of a ferry to
    provide "the necessary boats and ferrymen;" (2) the fact that the
    ferry shall have been for two years "wholly disused and unfre-
    quented."

W. P. D. BUSH FOR APPELLANT.

1. That part of subsection 3 of section 9 of chapter 42 of General Statutes,
    requiring the non-resident owner of a ferry to sell the same, is uncon-
    stitutional.

    There has never been any statute or law in force in this State pro-
    hibiting the granting of a ferry right to a non-resident owner; but,
    on the contrary, such ferry rights have always been granted. (Con-
    way v. Taylor, 1 Black, 603; Lytle v. Breckinridge, 3 J. J. M., 663,
    664; Trustees of Maysville v. Boon, 2 J. J. M., 226; Trustees of
    Jefferson Seminary v. Wagnon, 2 A. K. Mar., 379; Kennedy v.
    Trustees of Covington, 8 Dana, 50.)

    A ferry right on the Ohio river is appurtenant or incident to a
    freehold in the land, and incapable of being sold except by a sale of
    the land to which it is appurtenant. (Conway v. Taylor, 1 Black,
    632; 3 Kent, 459; Trustees of Maysville v. Boon, 2 J. J. Mar., 227;
    Lytle v. Breckinridge, 3 J. J. M., 668.) Therefore, the requirement
    of the non-resident owner that he shall sell his ferry right amounts
    to a requirement that he shall sell his land.

    The statute discriminates against non-residents, and is for that
    reason in violation of subsection 1 of section 2, article 4 of the Con-
    stitution of the United States. (Ward v. Maryland, 12 Wall., 418;
    Cooley's Con. Lim., 5th ed., * p. 487, top p., 602; Idem, * pp. 15–16,
    top pp. 21–22, and note 4, p. 21; Corfield v. Coryell, 4 Wash., U. S.
    C. C., 380.)

    The statute amounts to a confiscation of the non-resident owner's
    property, and is, therefore, in violation of the provision of the Con-
    stitution of Kentucky that no man's property shall be taken without
    just compensation. (Const. of Ky., art. 13, sec. 14.)

    Police power never compels the lawful owner of land or other
    property to sell it to another. (Cooley's Con. Lim., 5th ed., * pp.
    572–597, top pp., 706–746.)

2. The ferry right involved in this litigation was granted to John F.
    Dufour, a non-resident, June 5, 1843, long before the enactment
    of the statute, and the statute is unconstitutional as to said ferry
    right, if not as to such rights granted since the enactment of the

Dufour v. Stacey.

statute. (Const. of Ky., article 13, sec. 20; Const. of U. S., art. 1, section 10; Fletcher v. Peck, 6 Cranch, 138.)

A grant of a ferry right is a contract. (3 Kent, * pp. 458–459, top pp. 590–591, 11th ed.; Cooley's Con. Lim., * pp. 274–279, top pp. 331–337; Dartmouth College Case, 4 Wheaton, 625; Charles River Bridge Case, 11 Pet., 544; Mills, &c., v. St. Clair Co., &c., 8 How., 569; Fletcher v. Peck, 6 Cranch, 87.)

3. The appellees were concluded and estopped by the judgment of March 27, 1869, against Polly Dufour, the life-tenant of the ferry right and the land to which it was appurtenant. (Freeman on Judgments, secs. 246–259.)

H. M. WINSLOW on same side.

1. Subsection 3 of section 9, chapter 42, General Statutes, discriminates against non-residents, and is, therefore, in conflict with subsection 1 of section 2 of article 4 of the Constitution of the United States.

2. Said statute is also in conflict with the provisions of both the United States and State Constitutions forbidding the enactment of laws impairing the obligation of contracts, and with section 14 of Bill of Rights forbidding the enactment of laws taking private property for public use without just compensation.

Ferry rights across the Ohio river are appurtenant to the land, and are property just as the land itself is property. (Trustees of Jefferson Seminary v. Wagnon, 2 Mar., 379; Trustees of Maysville, v. Boon, 2 J. J. M., 227–8; Everston, &c., v. Sanders, 6 J. J. M., 143.)

Such rights are vested rights in regard to which the State has contracted with the owner; and especially when that contract, as in this case, was made previous to the adoption of the present Constitution, it can not be impaired, nor the rights acquired under it rendered less valuable by subsequent legislative enactments, much less be entirely destroyed. (Blackstone, Book 3, p. 219; Dartmouth College Case, 4 Wheaton, 518; Blair v. Williams, 4 Litt., 35; Lapsley v. Brashears, &c., 4 Litt., 53; Head v. Ward, 1 J. J. Mar., 284; Pearce's Heirs v. Patton, 7 B. M., 168; Griswold v. Hepburn, 2 Duv., 44; City of Covington v. Cov. & Cin. Bridge Co., 10 Bush, 76; Broadus v. Broadus, 10 Bush, 306; Baldwin v. Commonwealth, 11 Bush, 419; Cooley's Principles of Const. Law, Student's series, 1880, pp. 306, 320, 336–7.)

3. The judgment rendered in 1869 in an action in which the same questions were in issue is a bar to these proceedings. (Newport v. Taylor, &c., 11 B. M., 362; Harvie v. Cammack, 6 Dana, 243.)

GEO. C. DRANE for appellee.

1. The State may, by its statute laws, confine the right to hold a ferry franchise to its *resident citizens*.

Dufour v. Stacey.

The "privileges and immunities" secured to the citizens of the several States by section 2 of article 4 of the Federal Constitution, are only such "privileges and immunities" as are in their nature fundamental. (Corfield y. Coryell, 4 Wash., 380; Cooley's Const. Lim., note to marginal page 16, and marginal page 397; Conway v. Taylor, 1 Black, 603, 630–631.)

2. Subsection 3 of section 9, chapter 42, General Statutes, does not impair the obligation of any contract.

Our statute law has never contemplated that a non-resident of the State should be admitted to the privilege of holding a ferry franchise granted under the laws of this State. It must be presumed that the laws of the State prescribe the rights and duties of persons *within and subject to its jurisdiction*. (Cooley's Con. Lim., 1; Preamble to Constitution of Kentucky.)

A public ferry is a franchise; and the holder of a franchise must be a *subject* of the State granting it. (2 Black. Com., 37; 13 Serg. & Rawle, 130; McCready v. Virginia, 94 U. S.; 13 Bush, 212; 4 J. J. M., 30; State v. Mil. L. S. & W. R. Co., 45 Wis., 590.)

The substitution of the word "individuals" for the word "subjects," in the definition of a franchise in the case of Bank of Augusta v. Earle, 13 Pet., 519, was not intended to change the meaning of the common law definition. (2 Minor's Inst., 28; *Idem*, 226.)

Therefore, the grant of the franchise to John F. Dufour, a non-resident, in 1843 was void, as were the renewals of it in the names of other non-residents, and consequently appellant had no enforceable contract with the State.

3. The State has the power, by legislation, subsequent to the grant, to control and regulate franchises which impose upon the grantee a public service or trust, and particularly when it may be necessary to insure a performance [of that trust, provided no right or privilege granted, or *which is essential to the enjoyment of the franchise*, is impaired or taken away. (The State v. Southern Pacific R. Co., 24 Texas, 122.)

SAME COUNSEL IN PETITION FOR REHEARING *insists* that the common law made it a condition that the owner of a ferry franchise should be *a subject* of the sovereign granting the right, and that as to this condition no change has been wrought in the definition of the term *franchise* by its translation to this country, or by statute, our statute upon the subject of ferries being simply declaratory of the common law, except in such particulars as are specified. (Citing same authorities cited in original brief.)

H. COX ON SAME SIDE.

1. Each State has full power under the Federal Constitution to regulate and control its internal affairs. (Reeves v. Little, 7 Bush, 170; Newport, &c., v. Taylor's Ex'rs, 16 B. M., 755.)

2. The Federal Constitution was not intended to give to a citizen of any
State the right to hold a franchise granted by another State, in which
he could not be made amenable to the laws regulating that franchise.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1843, by an order of the Carroll County Court, a
ferry was established across Ohio river from the town
of Ghent to the Indiana shore, and the ferry right
was granted to J. F. Dufour, at the time owner of
land where site of the ferry was. In 1850 he con-
veyed to his wife, Polly Dufour, the land and ferry
right during her life, remainder to his sons, includ-
ing appellant, Julius Dufour. In 1853 Polly Dufour
filed the bond required by statute in such cases, which
was approved by the court, and she continued to use
and enjoy the ferry right, but executed no other bond
until 1863, when she tendered one to the county court,
which was not, however, accepted, nor any action taken
by the county court in regard to it previous to 1868.
At the last-named date the county court overruled her
motion then made to file a bond, made an order re-
voking the grant of the ferry right to her, and another
order granting the same ferry right to the trustees of
the town of Ghent.

An appeal from each of the orders was taken to
the Carroll Circuit Court, where judgment was ren-
dered reversing the order establishing the ferry upon
motion of, and granting the ferry right to, trustees
of Ghent, and directing the county court to take
the bond tendered by appellant, and continue the
ferry in her name. In 1877 Julius Dufour purchased
and became owner of the land and ferry right, exe-
cuted the required bond, and continued to operate

Dufour v. Stacey.

the ferry until April, 1888, when a rule was awarded against him by the county court to show cause why he should not sell the ferry right to a citizen resident of this Commonwealth, or forfeit the same; and the trustees of Ghent being subsequently made parties-plaintiff in the proceeding, a judgment of court was rendered overruling the response made by the defendant, and revoking the "ferry franchise granted in 1843 to John F. Dufour, and renewed and continued in 1877, to and in the name of Julius Dufour." From that judgment an appeal was taken to the Carroll Circuit Court, where judgment was rendered affirming "the judgment and order of the Carroll County Court forfeiting the ferry franchise claimed to be owned by the defendant Dufour."

The authority upon which the order of the county court was made is found in subsection 3, section 9, chapter 42, General Statutes, as follows: "A non-resident owner of a ferry right shall sell the same to a resident citizen of this State, within a year after his removal or accrual of his right, with leave of the court, and the purchaser give such new covenant. Upon failure to comply with any requisition of this subsection, the court shall revoke the grant," &c.

It appears appellant was not, when this proceeding was begun, nor had he ever been, a resident citizen of Kentucky; nor was either J. F. Dufour, original grantee, or Polly Dufour ever such resident citizens. As, then, appellant had failed to sell his ferry right within a year from accrual of it, the order of the county court revoking the grant can not be regarded either premature or erroneous, if legis-

lative power to divest him of the franchise, for the sole cause stated in the order, existed when that part of the statute quoted was enacted.

When the ferry was established in 1843 the statute did not make it a condition the owner of such franchise should be a resident citizen of this Commonwealth, and consequently the grant to J. F. Dufour, though at the time a non-resident, was valid and effectual. The only causes for which a ferry could, before the adoption of the Revised Statutes, be discontinued, which is equivalent to a revocation of the franchise, as held by this court in McCauly v. Givens, 1 Dana, 259, were: (1) A failure for six months after establishment of a ferry to provide "the necessary boats and ferrymen;" (2) the fact that the ferry shall have been for two years "wholly disused and unfrequented."

By subsection 5, section 8, Revised Statutes, the same provision was made as the one in the General Statutes under consideration, except that it applied to non-resident owners of ferry rights thereafter granted. But there was not, by the terms of the order granting the ferry right to J. F. Dufour in 1843, nor did the statute then provide there should be, any limit as to duration of the franchise, as is now the case, and has been since adoption of the Revised Statutes. It therefore follows, if he acquired such an estate or interest in it as is alienable, the statute of 1873 can not be regarded any more effectual to divest the appellant than such one passed before 1850 would have been to divest the original grantee.

In regard to ferry franchises, Kent, on page 459, volume 3, of his Commentaries, says: "The obligation

between the government and owner of such franchise is mutual.   He is obliged to provide and maintain facilities for accommodating the public at all times with prompt and convenient passage.   The law, on the other hand, in consideration of this duty, provides him a recompense by means of an exclusive toll.   An estate in such ferry and an estate in land rest upon the same principle, being equally grants of a right or privilege for an adequate consideration.   If the creation of the franchise be not declared to be exclusive, yet it is necessarily implied in the grant of a ferry  *  *  *  *  that the government will not, directly or indirectly, interfere with it, so as to destroy or materially impair its value."

In Trustees of Maysville v. Boon, 2 J. J. M., 225, this court thus defines a ferry franchise: "Nor can we admit conclusiveness of the argument that the grant of a ferry is always a personal privilege, which ceases with death or alienation of the grantee. As no one can be a recipient of such grant on the Ohio except owner of land on the river, the grant to him is a franchise incident to and growing out of his title to the land.   It is a hereditament which descends with the land to his heirs, and passes to his vendee by alienation of the right to the land.   It is, therefore, not like a tavern license, which is personal, but is like a right of way, or a right to a toll-bridge." And again, it was said in Lytle, &c., v. Breckinridge, 3 J. J. M., 663: "The right to a ferry on the Ohio is a franchise incident to a freehold in the land.   It passes with title to the land."

In Carter v. Kalfus & Watts, 6 Dana, 43, it was

said a right to ferriage, like that to *portage*, is val-
uable *property*, and requires on the Ohio river large
expenditures of money by the grantee of the fran-
chise, and is founded on a valuable consideration. It
is true this court, in Brown v. Given, 4 J. J. M., 28,
said: "A ferry is a public highway, and is estab-
lished more for the public good than for the indi-
vidual advantage of the grantee." Nevertheless, that
fact at the same time serves to show a ferry franchise
is the subject of contract between the Commonwealth
and grantee, and that a valuable consideration passes
from the latter to the former, whereby a property right
becomes vested.

It seems to us as J. F. Dufour legally and regularly
acquired, for a valuable consideration, title to the ferry
franchise, which this court has held to be property
alienable and descendible, that the Legislature has no
power by statute retroactive in its operation to divest
his vendee, or prevent the full enjoyment of it by him
for the sole cause he is a non-resident of the State.

It is needless to refer to the particular clause of the
Constitution the statute contravenes, because, it being
conceded, as is the case, that appellant has a vested
interest in the land and in the franchise as an inci-
dent of his title thereto, he can no more be deprived
of it by a retroactive statute, because he is a non-
resident of this State, than he could, in the same
manner and for the same reason, be deprived of a
right of way, or any other hereditament of a real
nature. Whether the power exists to pass such stat-
ute applicable to ferries to be thereafter established
is a question not now before us.

The judgment is reversed, and cause remanded, with directions to the circuit court to reverse the order of the Carroll County Court, and remand the case for that order to be also set aside.

Judge Pryor not sitting.