RAILROAD COMMISSION OF TEXAS ET AL. *v.* EASTERN TEXAS RAILROAD COMPANY ET AL.

STATE OF TEXAS *v.* EASTERN TEXAS RAILROAD COMPANY ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

Nos. 145 and 146. Argued March 8, 1923.—Decided February 18, 1924.

1. The usual permissive charter of a railroad company does not oblige the company to operate its railroad at a loss; nor is such obligation to be implied from acceptance of the charter and operation under it. P. 85.
2. In the presence of a reasonable certainty that future operation will be at a loss, a railroad company, in the absence of a contract, may cease operation, dismantle its road and realize its salvage value. *Id.*
3. Were the railroad to be compelled by the State in such circumstances to continue operation at a loss, it would be deprived of its property without due process of law. *Id.*

4. The principle allowing a railroad company to withdraw its property from public use that can be kept up only at a loss, is consistent with the State's power to regulate while the company continues to exercise the privileges of its charter. P. 85.

5. The mere presence of a particular provision in the statutes of a State relating to railroads, or even in a special act incorporating a railroad company, does not suffice to show that the provision is a part of the charter contract. P. 86.

6. When it becomes necessary to consider whether a State is attempting to deprive a litigant of property without due process, and the question turns on the existence and terms of an asserted contract, this Court determines for itself whether there is a contract and what are its terms. *Id.*

7. Article 6676, Rev. Civ. Stats. 1911, of Texas, requiring all railroads " carrying passengers for hire," to run certain passenger trains and make certain stops, etc., is a mere regulation of passenger service on roads in operation, and does not subject a railroad company, through charter contract or otherwise, to an absolute duty to operate for its full charter period in face of a reasonable certainty of pronounced loss. P. 87.

8. Article 6625, Rev. Civ. Stats. 1911, of Texas, (Act of March 29, 1889, c. 24) relates to the organization, rights and duties of corporations formed to take over, maintain and operate railroads sold under judicial decree, etc., and the clause, in its proviso, " nor shall the main track of any railroad once constructed and operated be abandoned or removed," applies only to railroads so sold. P. 88.

283 Fed. 584, affirmed.

APPEALS from two decrees of the District Court, the first awarding a permanent injunction in the Railroad Company's suit, brought in that court, to restrain the Railroad Commission of Texas, and others, from interfering with its right to abandon operation and dismantle and salvage its property; the second, dismissing a bill to restrain such abandonment, etc., brought by the State in a court of the State and removed to the District Court. See also 258 U. S. 204, where the same cases were passed upon by this Court in another aspect.

*Mr. W. A. Keeling,* Attorney General of the State of Texas, with whom *Mr. Walace Hawkins* and *Mr. Frank*

*Kemp,* Assistant Attorneys General, were on the brief, for appellants.

The Eastern Texas Railroad Company is under contract to maintain and operate its railroad continuously for the term of its charter. *Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Northern Securities Co.* v. *United States,* 193 U. S. 347; *Bullock* v. *Railroad Comm.,* 254 U. S. 513; *International, etc. Ry. Co.* v. *Anderson County,* 246 U. S. 424; *Same* v. *Same,* 106 Tex. 60; *Ricaud* v. *American Metal Co.,* 246 U. S. 304; *Horn Silver Mining Co.* v. *New York,* 143 U. S. 313; *Robbins* v. *Shelby Taxing District,* 120 U. S. 489.

The Company is under statutory duty to maintain and operate its railroad during the term of its charter. *State* v. *Enid, etc., Ry. Co.,* 108 Tex. 239; *Enid, etc., Ry. Co.* v. *State,* 181 S. W. 498; *State* v. *Sugarland Ry. Co.,* 163 S. W. 1047.

The St. Louis Southwestern bought the stock of the Eastern Texas, except qualifying shares, and has since operated the road.

Regardless of the specific statute, and even if it be correctly limited to " sold out " railroads, we submit that the manner by which the St. Louis Southwestern came to own the stock of the Eastern Texas makes the statute under such construction applicable. *Chicago, etc., Ry. Co.* v. *Minneapolis Civic Assn.,* 247 U. S. 490.

Because it is technically a separate legal entity, it does not follow that the Eastern Texas is an independent public carrier, free in the conduct of its business from the control of the company which owns its capital stock, furnishing its officers and electing directors. Article 6676, Tex. Rev. Civ. Stats. 1911, requiring operation of trains from day to day, is applicable.

The federal courts usually follow the state courts in arriving at the contract and statutory obligations exist-

97851°—24——6

ing between a State and its corporations. *Ricaud* v. *American Metal Co.,* 246 U. S. 304; *International, etc., Ry. Co.* v. *Anderson County,* 246 U. S. 431; *Missouri Pacific Ry. Co.* v. *Kansas,* 216 U. S. 262; *Burgess* v. *Seligman,* 107 U. S. 20; *Kuhn* v. *Fairmont Coal Co.,* 215 U. S. 349.

The constitutionality of the statute is immaterial when the company accepts the charter. *Interstate Consolidated Street Ry. Co.* v. *Massachusetts,* 207 U. S. 79.

The Fourteenth Amendment, preventing an unconstitutional taking of property, is not available to a railroad company seeking to escape a contract and statutory duty to continue operation and maintenance of its lines of railroad even at a loss. *Brooks-Scanlon Co.* v. *Railroad Comm.,* 251 U. S. 396; *Missouri Pacific Ry. Co.* v. *Kansas,* 216 U. S. 262; *Bullock* v. *Railroad Comm.,* 254 U. S. 519; *International, etc., Ry. Co.* v. *Anderson County,* 246 U. S. 424; *State* v. *Enid, etc., Ry. Co.,* 108 Tex. 239; *Ashley* v. *Ryan,* 153 U. S. 436; *Newburyport Water Co.* v. *Newburyport,* 193 U. S. 561.

*Mr. Jno. R. Turney,* with whom *Mr. Daniel Upthegrove, Mr. E. B. Perkins, Mr. E. J. Mantooth* and *Mr. W. B. Hamilton* were on the briefs, for appellees.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

These two suits involve the right of the Eastern Texas Railroad Company, a Texas corporation having a railroad in that State, to dismantle and abandon its road. One was brought by the company to prevent threatened interference by the State's officers; the other by the State to prevent intended dismantling and abandonment by the company. The former was begun in the District Court; the latter was removed into that court from a state court. The company prevailed, 283 Fed. 584, and the State and its officers prosecute these direct appeals,

The road is 30.3 miles long and all in Texas.  The company constructed it in 1902, operated it continuously until April 30, 1921, and then discontinued its operation because it had proved a losing venture.  The traffic over it during the period of operation was in greater part interstate and foreign commerce and in lesser part intrastate commerce.  The withdrawal from interstate and foreign commerce had the sanction of the Interstate Commerce Commission, given under a law of Congress, and was sustained by this Court in *Texas* v. *Eastern Texas R. R. Co.*, 258 U. S. 204.  The present controversy relates to the withdrawal from intrastate commerce and the intended dismantling and abandonment of the road.

The road was constructed primarily to carry traffic to and from large lumbering industries in that territory; but in the course of time those industries exhausted the adjacent supply of timber, and in 1917 they were permanently closed and the people who had been employed in them moved away.  The traffic over the road then fell off so much that the revenue became pronouncedly less than the cost of operation.  But the operation was continued until the company had exhausted its surplus accumulated in prior years, had come to be without cash or credit, and was unable to go on.  Its only remaining property consisted of the road and some meager equipment; and these had shrunken in value from $450,000 to $50,000,—the latter being the estimated salvage value less the cost of dismantling.  The property was offered for sale at $50,000 to any one who would operate the road, and the offer was widely advertised, but without eliciting any acceptance or bid.  Essential repairs would cost $185,000.  The operating cost would be as much as $84,000 per year; the possible revenue from all traffic would not exceed $50,000, and that from intrastate traffic would not be more than $20,000.  The adjacent country was sparsely populated; the soil had proved to be usually unproductive; there were

no local industries, and the general situation precluded any reasonable expectation that the road would become self-sustaining in the future. In these circumstances the company concluded to cease all operation and to dismantle and abandon the road.

The company was incorporated under a general law of the State in 1900 for a term of 25 years, and when it ceased operating the road four and one-half years of that term remained. It had not received any state land grant or other public aid; nor had it acquired any property through an exercise of the power of eminent domain, although that power was available under the law of the State.

In the District Court, the State and its officers took the position that under the state statutes the company was prohibited from dismantling or abandoning its road and was in duty bound, and could be compelled, to operate the same in intrastate commerce for the remainder of the 25-year term. In this Court they have adhered to that position, with the qualification that, in the circumstances shown, the company may not be compelled to operate the road but may be made to respond in damages to the State for a failure to operate it. The company, on the other hand, has contended throughout that the state statutes neither prohibit the dismantling and abandonment of the road nor lay on the company a duty to operate it when that can be done only at a loss, and that, if the statutes be as insisted on the other side, they deprive the company of property without due process of law and in that respect are in conflict with the Fourteenth Amendment to the Constitution of the United States.

The appellants rely on two statutory provisions, which they insist were in force when the company was incorporated and became a part of the charter contract. Before examining these provisions it is well to advert to principles which would govern in their absence, and also to considerations bearing on their office and effect.

The usual permissive charter of a railroad company does not give rise to any obligation on the part of the company to operate its road at a loss. No contract that it will do so can be elicited from the acceptance of the charter or from putting the road in operation. The company, although devoting its property to the use of the public, does not do so irrevocably or absolutely, but on condition that the public shall supply sufficient traffic on a reasonable rate basis to yield a fair return. And if at any time it develops with reasonable certainty that future operation must be at a loss, the company may discontinue operation and get what it can out of the property by dismantling the road. To compel it to go on at a loss or to give up the salvage value would be to take its property without the just compensation which is a part of due process of law. The controlling principle is the same that is applied in the many cases in which the constitutionality of a rate is held to depend upon whether it yields a fair return. *Brooks-Scanlon Co.* v. *Railroad Commission of Louisiana,* 251 U. S. 396, 399; *Bullock* v. *Railroad Commission of Florida,* 254 U. S. 513, 520; *State ex rel. Cunningham* v. *Jack,* 113 Fed. 823; s. c. 145 Fed. 281; *Iowa* v. *Old Colony Trust Co.,* 215 Fed. 307, 312; *Northern Pacific R. R. Co.* v. *Dustin,* 142 U. S. 492, 499; *Commonwealth* v. *Fitchburg R. R. Co.,* 12 Gray, 180, 190; *State* v. *Dodge City, etc. Ry. Co.,* 53 Kan. 329, 336.

So long as the railroad company " continues to exercise " the privileges conferred by its charter, the State has power to regulate its operations in the interest of the public, and to that end may require it to provide reasonably safe and adequate facilities for serving the public, even though compliance be attended by some pecuniary disadvantage. *Atlantic Coast Line R. R. Co.* v. *North Carolina Corporation Commission,* 206 U. S. 1, 26; *Missouri Pacific Ry. Co.* v. *Kansas,* 216 U. S. 262, 279; *Chesapeake & Ohio Ry. Co.* v. *Public Service Commission,* 242

U. S. 603, 607. But this rule in no wise militates against the principle that the company may withdraw its property from use by the public " when that use can be kept up only at a loss." *Brooks-Scanlon Co.* v. *Railroad Commission of Louisiana, supra.*

A State often has many laws relating to railroads on its statute books which do not become a part of the charter contract,—which are of such a nature that it is apparent the State could not have intended to make or exact a continuing and binding stipulation embodying their terms. Among such laws are those containing specific regulations respecting the safety of employees and travellers, liability for injuries, facilities for handling and moving traffic and redress for failure to provide the facilities prescribed. The occasion for keeping such matters where the legislature may deal with them as changing conditions may require forbids that they be regarded as part of the charter contract unless a purpose to make them such be plainly disclosed. In short, the fact that a particular provision is found in the statutes of the State relating to railroads, or even in a special act incorporating a railroad company, does not in itself suffice to show that the provision is a part of the charter contract. *Texas & New Orleans R. R. Co.* v. *Miller,* 221 U. S. 408, 415; *Chicago, Burlington & Quincy R. R. Co.* v. *Railroad Commission of Wisconsin,* 237 U. S. 220, 234. And see *Wisconsin & Michigan Ry. Co.* v. *Powers,* 191 U. S. 379, 387.

Where it becomes necessary to consider whether a State is depriving, or attempting to deprive, a litigant of property without due process of law in violation of the Fourteenth Amendment, and the question turns on the existence and terms of an asserted contract, this Court determines for itself whether there is a contract and what are its terms. *Louisville & Nashville R. R. Co.* v. *Palmes,* 109 U. S. 244, 255; *Stearns* v. *Minnesota,* 179 U. S. 223, 232. " The principle is general and necessary. *Ward* v.

*Love County,* 253 U. S. 17, 22.   If the Constitution and laws of the United States are to be enforced, this Court cannot accept as final the decision of the state tribunal as to what are the facts alleged to give rise to the right or to bar the assertion of it even upon local grounds." *Davis, Director General of Railroads,* v. *Wechsler,* 263 U. S. 22, 24.

By way of distinguishing the cases in hand from some which are cited by the appellants it is enough to observe that here the company has ceased to exercise the privilege conferred by its charter, of maintaining and operating the road as a common carrier,—and this because the available traffic has diminished to a point where further operation is economically impossible.

One of the statutory provisions relied on is found in Article 6676 of the Revised Civil Statutes of 1911, and requires that on all railroads "carrying passengers for hire" there shall be at least one passenger train a day, Sundays excepted; that these trains shall stop at stations a sufficient time to discharge and receive passengers, and that, "if so many are run", four of these trains going each way shall stop daily, Sundays excepted, at county seats.   This is nothing more than a regulation of passenger service on roads which are in operation and engaged in that service.   It does not purport to impose an unconditional duty to operate, or to carry passengers, but requires that where and while a passenger service is maintained it shall conform to the standards stated.   Such a provision falls far short of subjecting a railroad company, through charter contract or otherwise, to an absolute duty to operate its road for the full charter period, even after it becomes reasonably certain that the operation will be at a pronounced loss.

The other provision on which the appellants rely was enacted as part of an Act of March 29, 1889, c. 24, and was reënacted as Article 4550 of the Revised Civil

Statutes of 1895, and as Article 6625 of the like statutes of 1911. The original enactment is described in its caption as relating " to rights of purchasers of roadbeds, etc., sold for debt," and in the captions of both reënactments as relating to " new corporations in case of sale." It provides that the purchasers of any railroad sold under judicial decree, etc., and their associates shall be entitled to form a corporation to take over, maintain and operate the road with power to " construct and extend." This is followed by provisos of a restrictive nature, the last of which reads: " Provided, that by such purchase and organization no rights shall be acquired under any former charter or law in conflict with the provisions of the present constitution in any respect, nor shall the main track of any railroad once constructed and operated be abandoned or removed." A second section provides that any corporation so formed which shall " claim to be under the jurisdiction of the federal courts " shall thereby forfeit its reorganization, etc., and a third section declares the existence of an emergency requiring that the act take effect immediately on its passage, because of the absence of any sufficient law providing for the formation of a corporation " for the purpose of acquiring, owning, and extending such sold out property." A reading of the enactment, including its caption and emergency section, shows that every part of it relates to the organization, rights and duties of corporations formed to take over, maintain and operate railroads sold under judicial decree, etc., unless the concluding part of the proviso just quoted is to be taken as having a broader scope. The appellants contend that it should be so taken. Read by itself it gives strong support to the contention. But can it be rightly separated from the context and read alone? Does it when so read reflect the legislative intent? · In our opinion the answers must be in the negative. The provision evidently is intended to have the

same scope as the other parts of the act, and to be limited to the same railroads that they are. The captions used to describe the subject of the enactment give some support for this view, and the terms of the emergency section give it further support, for they make it fairly certain that only railroads sold for debt were in mind. The fact that the provision is included in a proviso strongly suggests that it is intended to qualify or restrict what precedes it rather than to reach into a larger field, and the suggestion is emphasized by the first part of the proviso, " that by such purchase and organization no rights shall be," etc. A single word, supplied by fair implication, will bring the provision into full accord with all that is in the proviso, and with all other parts of the act. With that word included, the provision will read " nor shall the main track of any [such] railroad once constructed and operated be abandoned or removed." To us it appears very plain that this is what is intended.

There was no decision on the question in the courts of the State when the company was incorporated or when it made its investment in the road. Two decisions made several years later have a bearing but seem to leave the matter more or less open even in those tribunals. One by the Supreme Court, given in 1917, treats the provision as applicable to all railroads. But the question was not discussed, possibly because the road there involved had been sold under a judicial decree. *State* v. *Enid, Ochiltree & Western Ry. Co.*, 108 Texas, 239. The other by the Court of Civil Appeals at Galveston, given in 1922, appears to treat the provision as applicable only to railroads sold for debt. *Wexler* v. *State*, 241 S. W. 231.

As already indicated, we are of opinion that the provision, like other portions of the enactment of which it is a part, applies only to railroads sold under judicial decree, etc. This road never was so sold. The company did not acquire it through such a sale, but constructed it as an original undertaking.

Our conclusion is that the appellants' reliance on the two statutes is not well grounded.   They are all that are claimed to make the company's charter other than one of the usual permissive type.   It follows that the District Court rightly held the company was entitled to withdraw the road from intrastate commerce and to dismantle and abandon it.

*Decrees affirmed.*