## McConnell v. Crittenden County.

(Decided May 16, 1933.)

JAMES A. WATSON, J. W. BLUE, Jr., and NUNN & WALLER for appellant.

G. L. DRURY and JOHN A MOORE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Richard McConnell was the owner of a ferry between Cave In Rock, Ill., and a point opposite in Crittenden county, Ky. Subsection 3, sec. 1808, Kentucky Statutes, reads in part as follows:

"A non-resident owner of a ferry right shall sell the same to a resident citizen of this state, within a year after his removal or the accrual of his right, with leave of the court, and the purchaser give such new covenant. Upon failure to comply with any requisition of this sub-section, the court shall revoke the grant, the party having been first summoned, or, if a non-resident, warned by an order posted at the courthouse door, on a court day of a previous term, and by publication in some newspaper printed in the county, if any such there be."

At the instance of one A. L. Easley, a citizen of Crittenden county, the county court, on July 8, 1929, prepared and signed a notice addressed to McConnell, ordering him to appear in the county court at its next regular term on the 12th day of August, 1929, to show cause, if any he had, why his ferry franchise should not be revoked on the ground that he was and had been for more than one year before the filing of the notice a nonresident of the state of Kentucky. On the hearing the county court overruled the special, but sustained the general, demurrer. On appeal the circuit court passed the special demurrer, sustained the general demurrer, and entered judgment dismissing the proceeding. On appeal to this court, the court, after passing on several questions, reversed the judgment and remanded the cause for proceedings consistent with the opinion. Crittenden County v. McConnell, 237 Ky. 806, 36 S. W. (2d) 627, 630. In concluding the opinion the court said:

"It is insisted that the notice fails to show that his franchise was acquired under the present statute, or not prior thereto. As a defense, he may show that he sold the franchise with the consent of the county court, or that it was granted prior to the enactment of the present statute, and that, by rea-

son thereof, his ownership is not subject to its provisions, or any other defense he may have. Dufour v. Stacey, supra [90 Ky. 288, 14 S. W. 48, 12 Ky. Law Rep. 268, 29 Am. St. Rep. 374], and Paynter v. Miller, supra [118 Ky. 29, 80 S. W. 469, 25 Ky. Law Rep. 2222].''

On the return of the case, McConnell challenged the right of Easley to prosecute the appeal to the circuit court and thence to this court. He also defended on the ground that on September 22, 1929, he, with the consent of the county court, sold the ferry right to the McConnell Ferry Company, a Kentucky corporation, and on the further ground that the franchise was granted prior to the enactment of subsection 3, section 1808, Kentucky Statutes, supra. The circuit court rejected these defenses and entered judgment revoking the franchise. McConnell and the McConnell Ferry Company appeal.

In view of the conclusion of the court the only question we need determine is whether appellant sustained the defense that the franchise was granted prior to the year 1851, when section 1808, Kentucky Statutes, was enacted. The evidence leaves no doubt that the franchise was originally granted long prior to 1851, and that by mesne conveyances that portion of the land to which the ferry right was appurtenant passed to T. N. Bracy and from him to McConnell, and, as the ferry right was on the Ohio River, it was incident to a freehold in the land, and passed with the title to the land. Trustees of Maysville v. Boon, 2 J. J. Marsh. 224; Lytle v. Breckenridge, 3 J. J. Marsh. 663; Dufour v. Stacey, 90 Ky. 288, 14 S. W. 48, 12 Ky. Law Rep. 268, 29 Am. St. Rep. 374. It also developed that one Lampert, lessee of Bracy, obtained a franchise from the county court on June 18, 1923, and that shortly thereafter he sold the franchise to McConnell with the approval of the county court. It further appears that, in 1926, McConnell applied for a 20-year renewal of the franchise, and this was granted by the county court. On these facts the court held that the original grant of the franchise was abandoned by Bracy when his tenant Lampert applied to the county court and obtained a ferry franchise in 1923, and that this abandonment was ratified by McConnell when he obtained his franchise in 1926. In reaching this conclusion the court adverted to

the fact that at times in the past the ferry service was very poor, and at other times entirely abandoned, and that in the opinion of the court the county court was not fully cognizant of its statutory duty or the rights of the public in the premises. The most that can be said is that, although there was much evidence to the contrary, there was some evidence tending to show that many years ago the service was not good, and that for a few short intervals of time the ferry was not in operation. Even if this be true, no steps were ever taken by the county court, the only body authorized to act, to revoke the franchise, and the evidence is wholly insufficient to show that at any time there was a complete abandonment of the ferry. On the contrary, it has continued in operation up to the present time.

It remains to determine whether the court properly adjudged that the old ferry franchise was abandoned by Bracy when his tenant applied for, obtained a new franchise, and sold it to McConnell, and that this abandonment was ratified by McConnell when he obtained a renewal of the franchise in 1927. Bracy and his tenant may have been doubtful as to the old ferry right, and have sought a new ferry right in order to make assurance doubly sure, and doubtless McConnell obtained the renewal of the franchise for the same reason. However this may be it is clear that one who has title does not abandon or forfeit it by acquiring a new title, and, as a ferry franchise is property, no reason is perceived why a different rule should apply. In the circumstances a new franchise or a renewal of an old franchise merely affirmed an existing right, and does not have the effect of taking away or destroying that right. We are therefore constrained to the view that there was no abandonment of the old franchise, and, as it was granted prior to the year 1851, it may not be revoked because of McConnell's nonresidence.

It follows that the **court erred in** reaching a contrary conclusion.

Judgment reversed, and cause remanded, with directions to enter judgment setting aside the order revoking the franchise.