MARTINGALE, LLC, Appellant,

v.

CITY OF LOUISVILLE; County of Jefferson;[1] Bridge the Gap, Inc; and Commonwealth of Kentucky, Appellees.

No. 2003–CA–000074–MR.

Court of Appeals of Kentucky.

July 9, 2004.

Reconsideration Denied Aug. 13, 2004.

Discretionary Review Denied by Supreme Court Jan. 12, 2005.

1. This appeal was filed before the merger of the two entities.

Donald L. Cox, William H. Mooney, Lynch, Cox, Gilma & Mahan, P.S.C., Louisville, KY, for Appellant.

James R. Williamson, Bethany A. Breetz, Stites & Harbison PLLC, Louisville, KY, for Appellee City of Louisville.

Before GUIDUGLI, JOHNSON, and MINTON, Judges.

## OPINION AND ORDER

MINTON, Judge.

This appeal arises following the condemnation of a bridge across the Ohio River, known as the Big Four Bridge. Martingale, LLC argues that the City of Louisville lacked the authority to condemn the bridge under principles of eminent domain, or in the alternative, that the condemnation was done improperly. Martingale attempted to enjoin the condemnation action through a separate suit in the federal

courts, but was unsuccessful in seeking relief.[2]

Though the history of the bridge begins in 1888, the instant case has its genesis more recently. The circuit court provided a succinct background which we incorporate as follows: [3]

> In Jefferson Circuit Court Case No. 86–CI–05157,[4] a personal judgment was recovered against The Louisville & Jeffersonville Bridge Corporation ("LJBC[")]), and the Jefferson County Sheriff levied against LJBC's personal property interest in the Big Four Bridge. (The bridge's superstructure had been severed from the underlying real estate.) At the Sheriff's sale on October 16, 1987, Bridge the Gap purchased the bridge's superstructure for the sum of $10,300. Subsequently, Bridge the Gap entered into an agreement to sell said superstructure to Martingale.

> On December 7, 2000, the Board of Aldermen's Resolution No. 268, authorizing the City of Louisville [ ] to bring a condemnation action on behalf of the Waterfront Development Corporation ("WDC") in connection with the development of Phase II of the Waterfront Park, was passed and approved. Condemnation proceedings were to be instituted if WDC was unable to negotiate a voluntary sale of the bridge with the property owner.

> On April 25, 2001, Bridge the Gap and Martingale filed a declaration of rights action in the United States District Court for the Western District of Kentucky, to enjoin the City and WDC from pursuing a condemnation action. On July 27, 2001, the City brought this condemnation action as to the Kentucky portion of the bridge. The Big Four Bridge spans the Ohio River. A majority of the bridge is located in Kentucky, but a portion thereof is located in Indiana.

> On August 6, 2001, the Court appointed three Commissioners to determine the difference between the fair market value of the Kentucky portion of the bridge before the taking and the fair market value remaining, if any, immediately after the taking. The August 22, 2001 Commissioners' Report set forth said difference to be $80,000.

> On October 4, 2001, Bridge the Gap and Martingale filed a motion to set aside the Commissioner's Report for failing to comply with KRS 416.580 and/or to stay this condemnation action pending the adjudication of the parties' federal action.

The circuit court ultimately decided against Martingale and Bridge the Gap, holding that the City did have the authority to condemn the bridge and had proceeded properly in the condemnation.

Shortly before the scheduled oral arguments, the City moved to dismiss Martingale's appeal on the basis that Martingale lacked a sufficient interest in the bridge to have standing to appeal. Martingale re-

**2.** *See Martingale LLC v. City of Louisville,* 361 F.3d 297 (6th Cir.2004). The Court held that Martingale's attempted action is barred by the Anti–Injunction Act, 28 USCA § 2283.

**3.** We note at this point that Martingale failed to provide a copy of the circuit court's opinion and order in the otherwise voluminous appendix to its brief, as mandated by Ky. R. Civ. P. (CR) 76.12(4)(c)(vii). While we have

chosen not to do so, we are authorized to impose sanctions for this failing under CR 76.12(8) and accordingly caution Martingale to be more cognizant of our rules in the future.

**4.** *Affirmed, Louisville and Jeffersonville Bridge Corp. v. Senler, Campbell & Assoc., Inc.,* No. 88–CA–001098–MR (Opinion rendered Aug. 25, 1989, and designated not to be published).

sponded by asserting it did have an equitable interest in the bridge, and by moving to strike the City's motion because it relies extensively on matters not contained within the record prepared for this appeal.

Martingale is correct that the City relies extensively on matters not made part of the record before this appeal was taken. As an appellate Court, we generally do not consider matters outside the record.[5] Therefore, the City's attempted reliance on matters not presented to the circuit court until well after this appeal was filed is not well taken. Rather, any issue regarding Martingale's standing in the underlying condemnation action must be addressed in a subsequent appeal taken from the circuit court's final resolution of the matter,[6] at which time a proper record may be developed. Accordingly, we deny the City's motion to dismiss Martingale's appeal, and grant Martingale's motion to strike the City's motion.

Though presented in multiple sections, Martingale's arguments on appeal from the circuit court's judgment on the City's right to take essentially fit into two main groupings. The first is that Martingale possesses certain franchises granted by the United States, the Commonwealth of Kentucky, and the State of Indiana, and that the City lacks the authority to condemn these franchises. The second group of arguments is essentially that the City failed to comply with various condemnation statutes, making the purported condemnation invalid.

Martingale's franchise argument is wholly without merit. As explained by the United States Supreme Court in *Monongahela Navigation Co. v. United States*,[7] the existence of a franchise, be it from the government of the United States or of an individual state, is not a bar to condemnation. Rather, it is a factor to be considered in determining the value of the property taken through condemnation. "[T]hat value depends largely upon the productiveness of the property,—the franchise to take tolls."[8] Therefore, the existence of a state or federal franchise would only affect the condemnation action to the extent that the City would be required to pay the reasonable value of the franchise taken.

However, in this case Martingale does not possess a valuable franchise from any government, state or federal. Martingale's predecessor petitioned the Interstate Commerce Commission to be allowed to abandon the bridge. The ICC declared that continued operation of the bridge would constitute an undue burden on interstate commerce which should no longer be permitted and accordingly granted the petition for abandonment in 1969. The approaches to the bridge were removed in 1974, making the bridge inaccessible.[9]

---

5. *See, e.g.,* Ky. R. Civ. P. (CR) 75 *et seq.; White v. White,* Ky.App., 883 S.W.2d 502, 505 (1994).

6. At the time of this writing, a motion for reconsideration of the circuit court's order dismissing Martingale from the underlying condemnation action remains pending.

7. 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893).

8. *Id.,* 148 U.S. at 329, 13 S.Ct. 622.

9. The United States District Court, in similarly rejecting Martingale's arguments regarding the bridge's status as a post road, its role in interstate commerce, and the continued existence of state and federal franchises to collect tolls stated:

   First, the contention that the Bridge is in interstate commerce is ludicrous. The structure is usable only by pigeons and other winged creatures. It is inaccessible to humans, except those with extremely long ladders. The Bridge has not been in use as a means of transportation across the river

The United States Supreme Court has acknowledged the possibility of abandonment of a franchise in both interstate and/or intrastate commerce.[10] "[T]he company [holding such a franchise] may withdraw its property from use by the public when that use can be kept up only at a loss."[11] Similarly, in *McConnell v. Crittenden County*,[12] Kentucky's highest Court was faced with a question of whether a ferry operator had abandoned his franchise across the Ohio River. While the Court held that no abandonment had occurred in that case, it can be inferred from its analysis that the Court presupposed the possibility that an abandonment of the ferry franchise was possible and legally permissible. Furthermore, the Court expressly held that a ferry franchise is property, and as such ordinary rules of property may be applied to questions involving franchises.[13]

▪ In this case, whatever franchises were associated with the bridge were abandoned by Martingale's predecessor. The actions of petitioning the ICC to be allowed to abandon the bridge and removing the approaches to the bridge manifest a clear intention to abandon any franchise to collect tolls, operate a post road, or any activity associated with commerce across the bridge. Therefore, Martingale possessed no franchises associated with the bridge, those franchises having been abandoned decades earlier.

Another of Martingale's arguments is that the condemnation failed to conform to the mandate of KRS 416.580(1) that the commissioners appointed by the circuit court consider the value of the entire property before the taking in calculating the difference in value after the taking. Martingale argues that it was error to only consider the value of the Kentucky side of the bridge in determining the value to be awarded following the condemnation. Martingale presents the interesting hypothetical wherein an owner of a building which straddles a state boundary is only compensated for a portion of the building which is demolished in one state, while a portion of the building remains standing in the other state. While this is an intriguing question which may need to be resolved in a proper case, this is not such a case.

Martingale's predecessor, Bridge the Gap, purchased its interest in the bridge at a sheriff's sale which was held to satisfy a judgment debt against the Louisville and Jeffersonville Bridge Corp. The Bridge Corp.'s only asset was the Big Four Bridge, which was seized to satisfy the outstanding judgment.

▪ It is axiomatic that "[t]he sheriff of one state may not levy process issued by the courts of that state on property situated in another state, since no state tribunal can exercise jurisdiction over persons or property within the borders of another state."[14] Here, the Jefferson County Sheriff had no authority to seize that portion of the bridge which is located within the borders of Indiana. Accordingly,

for over 30 years. The approaches having been removed, the Bridge cannot be used as a means of transporting goods or people. Slip Opinion at 5.

**10.** *See Railroad Commission of Texas v. Eastern Texas R. Co.*, 264 U.S. 79, 44 S.Ct. 247, 68 L.Ed. 569 (1924).

**11.** *Id.*, 264 U.S. at 86, 44 S.Ct. 247 (quotation omitted).

**12.** 250 Ky. 359, 63 S.W.2d 329 (1933).

**13.** *Id.*, 63 S.W.2d at 330.

**14.** 30 Am.Jur.2d *Executions and Enforcement of Judgments*, § 209 (citations omitted). *See also* KRS 426.010, *et seq.*

Bridge the Gap purchased only that portion of the bridge located in Kentucky, and it is only that Kentucky interest which Bridge the Gap could sell to Martingale. Therefore the commissioners appointed by the circuit court had no obligation to consider the value of the portion of the bridge in Indiana because Martingale did not purchase an interest in it from Bridge the Gap. Like the circuit court, we do not undertake to answer the question of the ownership of the Indiana side of the bridge. We hold only that Bridge the Gap did not purchase any part of the bridge outside of Kentucky at the aforementioned sheriff's sale in 1987, which precludes Martingale's current ownership claim based exclusively on that sale. Any remaining question regarding the ownership of the Indiana side of the bridge is for the courts of Indiana.

▪ Finally, we must address Martingale's argument that the city either lacked the statutory authority to condemn the bridge as personal property or did not follow the appropriate procedure. However, this argument ignores a point made clear by the circuit court's opinion; namely, that there are multiple avenues of condemnation available to the city and "one avenue for condemnation does not preclude other avenues for condemnation." [15] We cannot improve on the circuit court's analysis of this issue, so we adopt it herein as follows:

> [Martingale] also argues[s] that the City needed to set up a bridge commission to condemn the bridge under KRS 181.853(2). The Court agrees that KRS 181.853(2) gives a bridge commission the power to acquire by condemnation. However, under KRS 181.850(1), the City is not required to create a bridge commission but **may** do so. As a commission was not created by the City, KRS 181.853(2) is inapplicable.

> [Martingale] further argue[s] that condemnation of the bridge for a park purpose needs to be ordered by the director of parks and recreation under KRS 97.257. They also contend that only real property can be condemned under this statute, but the plain language of KRS 97.257 does not support such a limitation. The language of KRS 97.257 is permissive rather than mandatory, as alleged by [Martingale], as it reads that the director of parks and recreation **may** order the condemnation. KRS 82.082(1) gives the City, under a grant of home rule, the power of eminent domain in accordance with the provisions of the Eminent Domain Act of Kentucky, KRS 416.540 to KRS 416.680. KRS 83.520 provides that the provisions of KRS Chapter 97, among others, shall be considered permissive rather than mandatory and restrictions therein shall not be considered abridging the complete grant of home rule.

> [Martingale] also contend[s] that WDC is an instrumentality of the state and can only execute its right of eminent domain by requesting the Finance and Administration Cabinet to institute condemnation under KRS 416.560(3). This argument ignores the fact that WDC is also a city and county agency. As a city agency, in this instance, KRS 416.560(1) required WDC to request the City's governing body to institute condemnation proceedings on its behalf.

> Consequently, the Court finds that the City, acting on its own behalf and on behalf of WDC, has complied with the applicable condemnation statutes to this action.[16]

---

**15.** Op. at 831.

**16.** Op. at 831–32 (original emphasis).

Accordingly, the judgment of the circuit court is AFFIRMED. The City's motion to dismiss is DENIED, and Martingale's motion to strike the City's motion is GRANTED.

ALL CONCUR.